**UNITED STATES of America**

v.

**Luther L. POWELL, Appellant.**

**No. 23888.**

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 21, 1970.

Decided May 10, 1971.

Mr. Gerald B. Greenwald, Washington, D. C. (appointed by this court) for appellant.

Mr. Philip L. Cohan, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., John A. Terry and Robert A. Shuker, Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, McGOWAN, Circuit Judge, and SMITH,* Chief Judge, U.S. District Court for the District of Montana.

PER CURIAM:

Appellant was convicted by a jury of unauthorized use of a motor vehicle (22 D.C.Code § 2204). At trial the Government introduced uncontroverted evidence that at approximately 3:30 p. m., on March 2, 1969, a police officer discovered appellant driving a taxicab in the downtown area without a driver's license, automobile registration, or a cab driver's identification card. He arrested appellant, and, upon further investigation, learned from the cab company which owned the vehicle that the cab had been removed without authorization from the company's lot and had been driven sixty miles since that time. Appellant was the only witness to testify in his own behalf. According to his testimony, at 3:25 p. m., on the day in question he was returning by cab to the D.C. jail from an overnight leave which he was granted as a participant in a work release program. He was not due back at the jail until 9:00 p. m., but had decided to return at the earlier hour in order to complete clerical work relating to the program. After entering the cab, he informed the cab driver that he only had a twenty dollar bill and that he would

* Sitting by designation pursuant to 28 U.S.C. § 292(c) (1964).

need change to catch a bus at 5:30.[1] The driver agreed to change the bill and drove a few blocks to a shopping district, where he left the cab, taking appellant's twenty dollar bill and his cab driver's identification with him. When the driver failed to return after twenty minutes had elapsed, appellant went to look for the driver on foot. Unable to locate him, he returned to the cab, and upon discovering that the cab driver had left the keys in the ignition, decided to drive the cab around the block in order to continue the search. He had supposedly proceeded no further than a block, when stopped by the police officer.

Of the three claims of reversible error advanced by appellant, only one requires extended discussion.[2] It derives from the circumstance that, in instructing the jury that an element of the crime is that the vehicle was used for the defendant's own profit or purpose, the trial judge said:

> It is not necessary for the government to prove beyond a reasonable doubt that the vehicle was used for the defendant's profit or purpose or used for any particular length of time as long as the government has proved beyond a reasonable doubt the other elements of the offense and *proved that the defendant used it for some period of time for his own benefit.* [Emphasis supplied.]

It is argued that the failure of the judge to repeat the words "beyond a reasonable doubt" after the word "proved" in the italicized portion of this sentence left the jury free to believe that they need not find this element established beyond a reasonable doubt in order to find appellant guilty; and that this requires reversal of the conviction. The point is raised here for the first time, since no objection was taken at trial. We deal with the problem, therefore, within the limitations of the Federal Rules of Criminal Procedure.[3] Whether appellant's substantial rights, within the contemplation of the Rules, have been affected is a question which we have traditionally resolved by examining the entire record for the purpose of seeing whether serious prejudice has in all likelihood resulted. *See* United States v. Wharton, 139 U.S.App.D.C. 293, 433 F.2d 451 (1970).

There is, of course, no question but that appellant was entitled to have the jury instructed that the prosecution must prove each and every element of

---

I. There is no further mention made of the bus trip in the record, and it is difficult to comprehend what appellant meant by this reference since the rest of his testimony indicates that he was permanently returning to the jail at that time.

2. Appellant's two other points relate to asserted errors of commission or omission in the instructing of the jury, to which objection was not registered at trial. One is that the court should have fully explained the rules respecting the permissible inferences from the unexplained possession of stolen property. *See* Pendergrast v. United States, 135 U.S.App.D.C. 20, 416 F.2d 776 (1969). We note, however, that here the Government did not press upon the jury, either in argument or by request for instruction, the matter of inferring guilt from possession; and no instruction on this score was in fact given. In any event, *Pendergrast* involved a very different kind of inference from the one it is asserted the jury may

have made here. The other point is that the court should have given a cautionary instruction to the effect that evidence of a prior conviction went only to credibility and not to guilt. But the prosecution did not introduce any such evidence. It came in only as a consequence of appellant's testimony that he was out of jail on work release when the incident happened; and his counsel argued to the jury that it was not likely a man would take a car unauthorizedly when he had only a few more days to serve under his sentence.

3. Rule 30, relating to jury instructions, provides that "[n]o party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." Rule 52(b) states that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

the crime charged beyond a reasonable doubt. *See* Davis v. United States, 160 U.S. 469, 488, 16 S.Ct. 353, 40 L.Ed. 499 (1895); In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The question for us on this record is whether the judge in this instance fell so far short of doing this that the jury is likely to have misconceived the standard of proof which it was required to observe.

We must consider this instruction in the setting in which it was given. In Belton v. United States, 127 U.S.App. D.C. 201, 205, 382 F.2d 150, 154 (1967), the trial judge had improperly instructed the jury that "the law infers * * * malice" from the use of a deadly weapon, rather than "the law permits you to infer malice" from such a fact. No objection was made at the trial, and this court found that the error was not within the contemplation of Rule 52(b), saying:

> What we must decide, however, is whether this was "plain error" that wrought such substantial prejudice as to require reversal of the conviction even though no objection was made. We have little doubt that if objection had been made this slip of the tongue by a capable trial judge—assuming the reporter heard him right—would have been corrected. To a lawyer, there is an undeniable gulf between "the law infers" and "the law permits you to infer." We think it unlikely that the jury felt obligated by virtue of this simple phrase to find malice if it found defendant had a deadly weapon, particularly since the possibility of such an understanding was undercut by the context of the phrase. We must consider the impact in the court room, how the words sounded to the ear. The charge as heard in the court room did not ring an alarm of error or prejudice to counsel, * * *.

Viewed in this manner, we believe that the jury did not understand the judge as instructing that proof beyond a reasonable doubt was not needed to prove this element of the crime. Certainly the judge did not so intend. In a colloquy at the bench before he instructed the jury, the trial judge drew defense counsel's attention to this charge and explained that his purpose was to distinguish "a particular period of time" from "some period of time." It is significant that defense counsel, after reading the charge and then hearing it delivered to the jury, did not object at that time. This suggests strongly that counsel did not regard the judge's failure to repeat the words "beyond a reasonable doubt" in the last clause of the sentence in question as meaning that that clause could only be understood as dispensing with this standard of proof. If counsel did not, it is most unlikely that the jury did.

Elsewhere in the charge the court gave in full the standard charge explaining the concept of reasonable doubt and emphasizing the burden carried by the Government in this respect. What, unfortunately, the court did not do, presumably by inadvertence, was to include the sentence of the standard instruction which says that each essential element must be proved by the prosecution beyond a reasonable doubt.[4] Had that been done, there would have been no issue to be raised on appeal of the kind presently confronting us; and one of the important offices of this standard charge is to mitigate lapses or confusions which inevitably creep into verbal delivery. On this record, even without this charge, we do not find it necessary to reverse, but we emphasize the desirability, if indeed not the necessity, of the

---

4. The sentence in question is the last sentence in No. 8, Junior Bar Section of D.C. Bar Association, Criminal Jury Instructions for the District of Columbia:

Unless the Government proves beyond a reasonable doubt that the defendant has committed every element of the offense with which he is charged, you must find him not guilty.

giving of this charge in criminal cases, both in the interests of justice and of efficent judicial administration.

■ Although, neither raised by appellant at trial nor on this appeal, it has come to our attention that, in delineating the elements of this offense,[5] the trial judge never instructed the jury explicitly that the vehicle must have been used by appellant without the consent of the owner. *See, e. g.,* Johnson v. United States, 121 U.S.App.D.C. 19, 347 F.2d 803 (1965); Proctor v. United States, 85 U.S.App.D.C. 341, 177 F.2d 656 (1949); Pennsylvania Indemnity Fire Corp. v. Aldridge, 73 App.D.C. 161, 117 F.2d 774 (1941). *See also,* Junior Bar Section of the D.C. Bar Ass'n, Criminal Jury Instructions for the District of Columbia, No. 111 (1966). However, due to the failure of counsel to object to this omission at the trial, we again must determine whether this error was "plain."

Our examination of the record indicates that, although the jury was never explicitly charged on this element of the offense, they were adequately informed of this requirement, and necessarily found a lack of consent as a part of their other findings. The trial judge read the statutory provision to the jury before he charged them on the elements of the crime. That provision clearly states in the first line that it is directed toward "any person who, without the consent of the owner, shall take

* * *," 22 D.C.Code § 2204. In addition, the indictment, a copy of which the jury had in its possession during the deliberations, specified that the appellant took the car without the consent of the owner. Also, the very phrase "unauthorized use" connotes a lack of consent on the part of the owner. Given these clear indications as to the requirement of a lack of consent, it would be unwarranted to conclude that the jury did not fully understand that consent is an integral part of the crime.

In addition, the trial judge charged the jury that they must find that appellant knew the vehicle was stolen. It is apparent that the judge must have intended to include the requirement of a lack of consent when he gave such a charge, since a person driving a car knowing it is stolen must be taken as knowingly doing so without the consent of the owner. Surely the jury, in finding, as so charged, that appellant knew the cab was stolen, also included a finding that appellant used the vehicle without the owner's consent. Therefore, in these particular circumstances, the jury in effect was charged as to the element of lack of consent, and their finding as to knowledge that the vehicle was stolen must be taken as a finding that appellant used the vehicle without the consent of the owner.

It is also quite clear that there was sufficient evidence to support a finding of a lack of consent. The Government

---

5. The charge as given was as follows:

First, that the motor vehicle in question was stolen by someone. Second, that the defendant took the vehicle or that he used, operated or removed it within the District of Columbia. Third, that at the time the defendant used, operated or removed the vehicle, he knew it was stolen. Fourth, that the vehicle was driven or caused to be drived [sic] for the defendant's own profit, use or purpose. It is not necessary for the government to prove beyond a reasonable doubt that the vehicle was used for the defendant's profit or purpose or used for any particular length of time as long as the government has proved beyond a reasonable doubt the other elements of

the offense and proved that the defendant used it for some period of time for his own use or profit.

In order to justify a verdict of guilty on a charge of Unauthorized Use of a Vehicle, it is not necessary to show that the defendant stole the vehicle. It is sufficient to show that the defendant, with a specific intent, drove or used the vehicle knowing it to have been stolen. Knowledge that the vehicle had been stolen ordinarily cannot be proved directly because no one can see the operations of the mind of another human being. Knowledge may be inferred from circumstances, things that are done, things that are said and surrounding circumstances.

introduced evidence tending to show that the owner gave no one permission to use the vehicle. Appellant did not controvert this presentation with his defense. In fact, in his testimony he admits that he did not receive permission to use the cab from the cab company nor from the supposed cab driver.[6]

Affirmed.

BAZELON, Chief Judge (concurring):

I have no doubt that the critical passage in the instructions—quoted on page 996 of the court's opinion—would not have misled the jury, if read with emphasis on "particular length of time" as opposed to "some period of time." Given the obvious intent of the instruction and the relevant colloquy at the bench before the instructions were read, I am confident that it is highly likely that the passage *was* read in such a way that the jury was not misled.

I am still troubled, however, by the trial judge's failure to give an explicit instruction that every element of the offense must be proved beyond a reasonable doubt. The standard of persuasion is *so* important at criminal trials that I consider it to be an error for the judge *ever* to omit such an instruction.

Given that error occurred, was it harmless? A court will always be reluctant to find that an error on the reasonable doubt standard is harmless, but because of the circumstances of this trial, I am as convinced as one can be that the error had no impact on the jury at all.

According to the charge given by the judge, the Government had to prove, first, that the cab was stolen by someone; second, that appellant used the cab in the District of Columbia; third, that appellant knew the cab was stolen; and fourth, that the cab was driven for appellant's own profit, use or purpose. In fact, however, because of the way this case developed at trial, only the third element—whether appellant knew the cab was stolen—presented a controverted issue of fact for the jury.

Appellant made no attempt at all to controvert the first two elements—that the cab was stolen and that appellant used it in the District. And the last element—whether the cab was driven for appellant's own profit, use or purpose—dropped out of the case because the Government's consistent and explicit position was that if the jury believed appellant's story, it would have to acquit. That is, the Government made no attempt to argue, as it clearly could have, that the jury might convict appellant even if they did believe his story. A very real issue might be posed whether or not appellant's story presents a defense to a charge of unauthorized use. Apparently, however, the Government was willing to rest on its prediction that the jury would not believe appellant's story at all. It is possible that the Government shared the trial judge's misapprehension about the law of unauthorized use, since it made no objection when the judge charged that the jury must find that the cab was stolen and that appellant knew it was stolen. I am at a loss to discover the source of this theory, which makes it much more difficult for the Government to convict defendants of a very simple offense: using another's automobile without his consent.

Thus the Government went to the jury on a theory that was very favorable to the defendant. Since no facts were disputed relevant to "profit, use or purpose" as a distinct issue, there was only one issue of fact for the jury: did appellant know the cab was stolen, or in other words, did they believe appellant

---

6. In charging that the jury must find the motor vehicle to have been stolen by someone, and that appellant knew it was stolen, the trial judge appears to have gone beyond the requirements of the statute and imposed a burden which the prosecution was not required to carry. This imposition was upon the Government, however, and not upon appellant, and the latter can hardly have been prejudiced thereby.

or not. The Government's prediction was correct; the jury did not believe appellant and convicted. The jury had been amply instructed that the Government must prove its case beyond a reasonable doubt; since only one element of the crime genuinely went to the jury, the error in the reasonable doubt instruction with respect to multiple elements became harmless. Since, in addition, unauthorized use is clearly a "lesser included offense" of the nonexistent crime of knowingly using a stolen automobile, I cannot say that appellant's "substantial rights" were infringed by the circumstances of this conviction.