**UNITED STATES of America**
**v.**
**Earl THOMAS, Appellant.**
**No. 24751.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 9, 1971.

Decided Feb. 28, 1972.

As Amended March 13 and 20, 1972.

Mr. Shellie F. Bowers, Washington, D. C. (appointed by this court) for appellant.

Mr. Barry W. Levine, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., at the time the brief was filed, John A. Terry and William H. Collins, Jr., Asst. U. S. Attys., were on the brief, for appellee.

Before WRIGHT and WILKEY, Circuit Judges, and A. SHERMAN CHRISTENSEN,* U. S. Senior District Judge for the District of Utah.

## PER CURIAM:

This appeal involves questions of the admissibility of evidence, asserted plain error in the giving, or the failure to give, certain instructions to the jury, the application or retroactivity of United States v. McClain, 142 U.S.App.D.C. 213, 440 F.2d 241 (1971), and a problem of merger of offenses.

A two-count indictment charged appellant with second degree murder, 22 D.C. Code § 2403,[1] and cruelty to children, 22 D.C.Code § 901.[2] The trial occurred in June, 1970. The jury returned a verdict of not guilty of second degree murder but guilty of the lesser included offense of manslaughter, 22 D.C.Code § 2405,[3] under the first count, and guilty as charged under the second. Appellant was sentenced to concurrent terms of imprisonment of from four to twelve years on the manslaughter conviction and from eight to twenty-four months on the cruelty conviction.

The indictment charged:

"On or about October 11, 1968, within the District of Columbia, Earl Thomas, with malice aforethought, did scald Joseph Hill with boiling water, thereby causing injuries from which the said Joseph Hill did die on or about October 27, 1968.

"Second Count:

"On or about October 11, 1968, within the District of Columbia, Earl Thomas did torture, abuse and otherwise willfully maltreat Joseph Hill, a male child under eighteen years of age, that is, about fourteen months of age."

At the trial there was ample evidence, expert and circumstantial, from which could be found beyond a reasonable doubt that because of long standing impatience or ill will toward this fourteen month old child of the woman with whom he was living, appellant intentionally and mercilessly immersed the legs and lower body of the child in scalding water with the result that he suffered grievous burns and later died. The circumstantial and expert evidence was sufficient to enable the jury to believe

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d) (1970).

1. "Whoever with malice aforethought, except as provided in sections 22–2401, 22–2402, kills another, is guilty of murder in the second degree."

2. "Any person who shall torture, cruelly beat, abuse, or otherwise willfully maltreat any child under the age of eighteen years . . . shall be subject to punishment by a fine of not more than two hundred and fifty dollars or by imprisonment for a term not exceeding two years, or both."

3. "Whoever commits manslaughter shall be punished by a fine not exceeding one thousand dollars, or by imprisonment not exceeding fifteen years, or by both such fine and imprisonment."

**1174**

beyond a reasonable doubt that the appellant's explanation that the burns were suffered as a result of the accidental splashing of water from a stove upon the body of the child was not true, the burns being of a nature to be caused only through immersion.

■ The appellant's first point is that the trial court committed plain error in failing immediately, or in any event at some time during the course of the trial, to give to the jury limiting instruction concerning evidence of prior assaults upon the child by the defendant. It cannot be questioned that this evidence was relevant and material to the issues of malice, intent, and willfulness, as well as being in refutation to appellant's contention, as later disclosed in his testimony, that the burning of the child was accidental since the appellant felt kindly toward him. But appellant contends that the court erred in receiving this testimony without at least cautioning the jury concerning its restricted purpose and that despite the failure of his trial counsel, not his counsel on appeal, to request such an instruction, or to object to the failure to give it, the trial court committed plain error in this respect which should be noticed on appeal. United States v. McClain, 142 U.S.App.D.C. 213, 440 F.2d 241 (1971).

In *McClain*, appellant had been charged with second degree murder for pushing his wife from the porch of a house causing injuries which resulted in death. After trial the jury, as here, returned a verdict of manslaughter. The court held that it was plain error requiring reversal to admit evidence of an act of violence committed by appellant upon his wife some seven months prior to the homicide without cautioning the jury that the evidence should be considered only on the issue of malice and that the jury might consider such evidence only after they may have determined that the defendant was guilty of the unlawful killing of decedent on the date in question. Chief Judge Bazelon, writing for the court, found the problem raised in *McClain* indistinguishable from Jones v. United States, 128 U.S.App.D.C. 36, 385 F.2d 296 (1967), in which it was held that when a party seeks to impeach any witness by a prior inconsistent statement, it is plain error not to give an immediate instruction limiting the effect of the prior statement unless the party explicitly waives the instruction.

It is implicit in *McClain* that waiver is not to be construed from the failure of counsel to request such an immediate instruction or otherwise to object to the admission of the evidence in the absence of such an instruction. While in the present case appellant's counsel indicated to the trial court that he was satisfied with the final charge to the jury and that the court had done "well by the defendant", we perceive no waiver within the doctrine of *McClain*.[4]

There are significant differences, however, between the facts in that and the present case: apparently, in *McClain*, there was an issue whether defendant pushed the decedent and thus proximately caused her death or whether she fell by reason of her own intoxication; here, there is no question that the defendant's acts caused the scalding, the issue being whether he acted accidentally or intentionally. There, the prior assault was single and somewhat remote in time; here, a series of prior abuses led up to and was closely related to the homicide in question. There, the judge by his own questioning had elicited the prior instance after having ruled it out apparently as too remote upon the objection of the attorney for the appellant;

---

4. "Waiver of an instruction, then, will usually mean that omission of the instruction is not error at all, much less plain error. If the waiver is going to have such an effect, however, it must be explicit; there must be a clear statement that the particular instruction in question is being waived, and it must appear from the record that the waiver was made on tactical grounds, rather than counsel's misapprehension as to the law." 142 U.S. App.D.C. 213, 217, 440 F.2d 241, 245 (1967) (citations omitted).

here, there was no objection on that or any other ground and the judge did not lend emphasis to the evidence. There, the evidence was received and tested on the single issue of malice with reference to a charge of homicide; here, the evidence in question along with other surrounding facts constituted and apparently was received as circumstantial evidence going not only to the question of malice with reference to the homicide but to the vital issue whether the scalding of the baby was intentional, as the Government contended, or accidental, as the defendant claimed and, if the former, whether or not the act constituted willful maltreatment.[5] *McClain* should not be read so broadly as to require the court in cases such as this necessarily to give under pain of reversal special cautionary instructions concerning circumstantial evidence which is introduced for multiple rather than limited purposes, particularly in the absence of request therefor. *See* United States v. Bobbitt, 146 U.S.App.D.C. 224, 450 F.2d 685 (1971). Indeed, with such diffused purposes of evidence, it would be difficult if not impossible to frame a meaningful, limiting instruction or comment except, if at all, in connection with and as a part of the final charge. If circumstances such as those involved in the present case, which arose and was tried prior to January 27, 1971, when the opinion in *McClain* was filed, could be thought to be contemplated by that decision, its doctrine should not be applied thereto retroactively.

■ Appellant next complains of testimony from the mother of the deceased child in connection with her description of prior assaults by the defendant upon the infant that upon her becoming angry with appellant for beating the baby "he strangled me and he slapped me and about that time I was pregnant with his

child". Notwithstanding the absence of any objection or motion by appellant's counsel at the trial, it is argued now that the trial court *sua sponte* should have declared a mistrial or at the very least ordered the testimony stricken and immediately admonished the jury to disregard it.

The statement in question was volunteered by the witness in the course of Government counsel's inquiry concerning defendant's conduct and attitude toward the baby two or three weeks before the fatal events occurred. We have read the transcript and cannot agree with the appellant that the statement was invited or designed by the Government or that it reasonably could have been anticipated. Moreover, the attack upon the witness as a result of her protest against the striking of the baby was relevant to the latter aspect of the evidence in the nature of *res gestae*. Rather than emphasizing the matter after it came in, appellant's counsel well could have elected to pass it by as relatively unimpressive in contrast with evidence of the assaults upon the baby. In any event, we do not believe that it was plain error for the court to fail on its own motion to strike the reference to appellant's attack upon the witness. Nor in the absence of a motion on behalf of the appellant do we think that the court erred in failing to declare a mistrial *sua sponte,* thus possibly to invite the defense of double jeopardy in any retrial.[6]

■ There are substantial collateral consequences possible, and additional stigma attaching from conviction on the cruelty charge in addition to the manslaughter charge. We therefore reach appellant's additional assignments of error with reference to his conviction on Count Two notwithstanding this conviction involved a sentence shorter than, but to be served concurrently with, the

---

5. As noted *McClain* deals with evidence of more limited purpose, as does United States v. Bussey, 139 U.S.App.D.C. 268, 432 F.2d 1330 (1970), where an attempt was made to prove identity from collateral "signature" facts.

6. *See* United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). *Cf.* Gori v. United States, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961).

sentence on Count One.[7] Despite the serious nature of the offense of manslaughter, the possible collateral consequences of an additional correction for cruelty to a child and the additional stigma that would attach lead us to the conclusion that there is a justifiable controversy as to the second count which warrants its consideration.

The instructions of the court dealing particularly with Count Two are set out in the margin.[8] The appellant contends that the trial court committed plain error by omitting from this charge and particularly from the enumeration of the essential elements of the crime the requirement of "willfulness". In Byrd v. United States, 119 U.S.App.D.C. 360, 342 F.2d 939 (1965), it was held fundamental error to send a case to the jury without instructions as to all of the elements of the offense which the Government was required to prove beyond a reasonable doubt before a verdict of guilty could be returned. United States v. Powell, 145 U.S.App.D.C. 332, 449 F.2d 994 (1971), does not militate against the application of *Byrd* to the present case.

The Government points to the fact that the statute as read to the jury included reference to the element of "willfulness" and immediately preceding the instruction concerning cruelty to

children the court had told the jury following the homicide instructions that "an act is done willfully if done knowingly, intentionally and deliberately." "Knowingly" was then described: "An act is done knowingly if done voluntarily, purposefully and not because of mistake, inadvertence or accident." We are inclined to believe that the position of these instructions in the charge, while involving uncertainty on the point, did not preclude their being thought applicable both to the cruelty charge and to the homicide charge. But irrespective of this appellant contends that they were insufficient with respect to Count Two in that they did not describe, beyond a mere intentional, non-accidental act, one involving evil intent or a bad purpose either to disobey or disregard the law.

It is true that an allegation that a person has "tortured" or "cruelly beaten" an infant in common understanding could indicate that, beyond mere intentional injury, the perpetrator did so with an abandoned or malignant heart.[9] It will be noted, however, that the court in stating the elements of the offense did not limit itself to a statement of "cruelly beating or torturing" but also indicated in the disjunctive that it would be sufficient if the accused "abused or mistreated" the child. On the other hand, reasonably with reference to abuse

---

7. Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969) ; United States v. Spears, 145 U.S.App.D.C. 284, 449 F.2d 946 (1971).

8. "Now, Title 22, § 901 of the District of Columbia Code involves cruelty to children and reads in pertinent part as follows, but I will not read the entire provision but just the pertinent section :
    "Any person who shall torture, cruelly beat, abuse or otherwise willfully maltreat any child under the age of 18 years shall be punished as provided in this section of the Code.
    "The essential elements must be proved beyond a reasonable doubt by the government and they are :
    "One, that a person tortured, cruelly beat, or abused, or mistreated (sic) the child.

"Two, that the child at the time was under the age of 18 years.
    "As I indicated, members of the jury, there are two counts in this indictment.
    "The first count involves second degree murder and the second count involves the cruelty to a child."

9. "*Cruel* . . . disposed to give pain to others; willing or pleased to hurt or afflict; savage; inhuman; merciless."
    "*Torture* . . . act or process of inflicting severe pain, esp. as a punishment, in order to extort confession, or in revenge . . . " Webster's New International Dictionary 635, 2674 (2d unabr. ed 1954).
    *See also* 25 C.J.S. Cruelty pp. 21–22 (1966).

and certainly concerning maltreatment of a child, an essential element that fairly required specification was willfulness in its evil or bad-purpose aspect. The words themselves do not impute necessarily the element of evil intent beyond general intention to do the act. Even if the court's definition of willfulness as "knowingly, intentionally, and deliberately" were to be deemed integrated with the cruelty instruction and willfulness in that limited sense were to be assumed as having been explained to the jury, a serious definitional deficiency would still exist.

In Mullen v. United States, 105 U.S. App.D.C. 25, 263 F.2d 275 (1958), this court held that the common law concept of crime as a combination of an evil state of mind with the doing of an evil act applies to this misdemeanor. The trial court in *Mullen* ruled that the defendant had not "tortured" the child so that the sufficiency of that word alone to connote an evil state of mind was not at issue. This court said, however, that reversible error resulted from the failure of the lower court to include in the instruction the "evil state of mind" element with reference to the abuse and maltreatment charge for which the defendant was convicted. Here, even though "willfulness" was mentioned in the indictment and in the statute as read to the jury, and was generally defined, it was essential that the court go further and specifically include "willfulness" in its evil mind connotation as an essential element of the offense charged. Failure to do this constituted plain error [10] within the teaching of *Byrd, supra. Cf.* United States v. Powell, 145 U.S.App.D.C. 332, 449 F.2d 994 (1971).

There is another reason why the cruelty conviction may not stand. While the court read to the jury the indictment which charged the act of cruelty as having occurred "on or about October 11, 1968", it failed to clarify and to instruct the jury that all the elements comprising the cruelty offense must have occurred on October 11, 1968, as distinguished from those occurring on previous occasions, if a verdict of guilty on Count Two was to be returned. Evidence had been received as to other acts in the general time period which could have constituted cruelty. We have already held that the admission of this evidence was proper as circumstantial evidence on various issues. The court's charge concerning the elements of the cruelty count, however, entirely omitted any reference to the occasion or time involved, simply stating that the related essential element was "that a person tortured, cruelly beat or abused, or mistreated the child". Especially in view of the wide scope of the evidence thus accepted, mention in the indictment as read to the jury of the time "on or about October 11, 1968" did not remedy the omission; as a matter of fact, it could have enhanced its prejudicial effect because the evidence precisely fixed the scalding episode as occurring on October 11, whereas there were a number of other acts which the jury could have considered curelty to the child which occurred shortly preceding but about that time. The general time reference contained in the indictment, while appropriate as an allegation in the indictment, did not serve under the peculiar circumstance of this case to identify the occasion as to which the elements of the offense had to be established beyond a reasonable doubt.[11]

---

10. The suggestion that this error could be disregarded as non-prejudicial on the theory that conviction on the first count necessarily involved acceptance by the jury that the appellant mercilessly immersed the infant in scalding water is rejected by reason of the separate consideration the jury was required to give to the sufficiency of proof of the elements of each count under proper instructions.

11. The murder instruction also contained the "on or about" reference, but of course there was no possibility of misunderstanding here. The evidence and the context of the instruction made it clear that the Government was relying as a basis of the

It may seem farfetched to suppose that the jury would hesitate to find the defendant guilty of cruelty for the event occurring October 11 if it believed him guilty of cruelty on the immediately preceding dates; but the point is that the issue was sharply drawn whether the October 11 occurrence was merely accidental and hence not willfully cruel. As to the prior episodes no such issue was sharply raised. In view of all of the circumstances it should have been made clear that in order to justify a finding of violation of the cruelty statute the jury would have to have in mind the October 11, 1968 act specifically as having been "willfully" committed.

■ Appellant's contention that the cruelty charge merged into the manslaughter conviction is without merit.[12] Count Two had societal purposes as well as essential elements differing from those of Count One. The Government, aside from the components of murder, had to prove with reference to the former that the victim was under 18 years of age and that the act was cruel, torturous or constituted willful abuse or maltreatment, neither of which are essential elements of manslaughter. Cases now relied upon by appellant in support of the merger argument are plainly distinguishable.[13]

For the reasons stated, the conviction of the appellant on Count One is affirmed and on Count Two reversed.

---

murder charge upon the immersion of the child in the scalding water on October 11 as proximately causing the death. No such limiting factor appears with reference to the cruelty charge.

12. Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). *Cf.* Ashe v. Swenson, 397 U.S. 436, 460, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1969) (Burger, C. J. dissenting); Evans v. Unit-

---

ed States, 98 U.S.App.D.C. 122, 232 F.2d 379 (1956).

13. *See* Prince v. United States, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957); United States v. Parker, 143 U.S.App.D.C. 57, 442 F.2d 779 (1971); Bryant v. United States, 135 U.S.App.D.C. 138, 417 F.2d 555 (1969); United States v. Spears, 145 U.S.App.D.C. 284, 449 F.2d 946 (1971).