UNITED STATES of America

v.

Gregory L. HARRIS, Appellant.

No. 23254.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 18, 1970.

Decided Nov. 27, 1970.

Mr. Robert F. Sagle, Washington, D. C. (appointed by this Court) for appellant.

Mr. Robert J. Higgins, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., John A. Terry and David C. Woll, Asst. U. S. Attys., were on the brief, for appellee.

Before MacKINNON and WILKEY, Circuit Judges, and CHRISTENSEN,* U. S. District Judge, District of Utah.

CHRISTENSEN, District Judge:

Appellant Harris was found guilty by jury verdict and sentenced on two counts of armed robbery and eleven counts of assault with a dangerous weapon. He was indicted with five other persons following the robbery of a Sears, Roebuck & Co. branch store in the northeast section of the District. He seeks reversal of his conviction claiming that his in-court identification by a government witness was tainted by an improper line-up identification, that hearsay testimony impermissibly undermined his defense of alibi, and that he was prejudiced by comments of the trial court to the jury concerning two defendants who had entered pleas of guilty during the trial.

The record is somewhat complicated as it touches upon all of the parties and issues initially undertaken. Details to the extent deemed necessary will be referred to in the discussion of each point, but the background facts essential to an understanding of any focused discussion are these:

The holdup in question occurred at about 2:00 p. m. on September 26, 1968, when four armed men entered the store.

---

* Sitting by designation pursuant to 28 U.S.C. § 292(c).

While one remained inside the door at the top of some steps and covered several employees with his gun, the other three descended the steps, spread out, and through threats to employees of the store rifled two cash registers. After rejoining the fourth on the steps, they backed out of the store with $312 from the registers.

Even before the men left the police had been contacted by one of the employees. In addition, James Mahoney, another employee, followed the gunmen from the store and observed several men speeding away in a Chevrolet. It may be inferred that they were the robbers, or some of them, although Mahoney did not identify them in the car. The details of the subsequent chase by Mahoney and another employee, and an independent pursuit by a special policeman, need not be recounted. It is enough to note that the Chevrolet was found with its passenger door open against a curb. Four men were seen to proceed rapidly from the vicinity into an apartment building. Two men shortly afterwards came down the stairs to the apartments and were immediately arrested at the entrance to the building. They were later identified as Harry Brown and Lauren Wood. Neither of the latter carried a gun or money at the time of his arrest.

In seeking entrance to a third floor apartment in the vicinity of which the men had been seen, by means of a key supplied by a custodian, the police were impeded because the door had been chained. Looking past the door, however, they saw occupants running to the rear of the apartment. The door was then kicked in and the apartment searched. In a children's bedroom they found Rowan Pinkett, the lessee of the apartment, seated on a chest of drawers, and the appellant Harris lying on a bed. Samuel Savage was hiding in a closet in the same bedroom. Across the hall in the master bedroom the police found Clifton Jones, and in another closet, Walter Fleming. Three operable guns, two of them loaded and one bearing Fleming's fingerprints, were found. Money discovered in the apartment by the police, some secreted in a tennis racket, totaled $285. All five men in the apartment were arrested and taken to the Robbery Squad office along with Brown and Wood.

A few hours after the holdup the witnesses to the robbery were brought to the Robbery Squad office. After some delay a Legal Aid attorney arrived to represent the defendants. A line-up identification followed at which several of the suspects were identified by various witnesses. James Mahoney was the only one to positively identify the appellant as one of the robbers. Only the seven suspects were in the line-up, and it was common knowledge among the witnesses that they were the ones under arrest in connection with the case. Brown, Wood, Jones, Savage, Fleming and appellant Harris were later charged with the commission of related offenses.

Prior to the trial the government dismissed its case against Jones, and after the swearing of the jury Fleming and Savage elected to plead guilty. The jury acquitted Wood and Brown while convicting the appellant, Harris. The government's successful case against him was based significantly upon his in-court identification by Mahoney and the circumstances of his apprehension immediately following the robbery, together with other suspects, in the apartment of Pinkett.

First, appellant says that "it was prejudicial error for the court to permit the only witness who placed the defendant at the robbery to make an in-court identification where the government did not establish by clear and convincing evidence that such identification was based upon observations of the defendant untainted by the improper lineup identification."

The trial court was observant of the procedure taught by Clemons v. United States, 133 U.S.App.D.C. 27, 408 F.2d 1230 (1968), cert. denied, 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969).

On facts elicited out of the presence of the jury it ruled that the line-up identification was unduly suggestive because only the seven suspects were presented for possible identification. Having found this a violation of due process, the court considered whether the tendered in-court identifications had an untainted and independent source and thus were admissible. Under this test it concluded that some were not but that Mahoney's in-court identification of appellant was admissible. The court nonetheless did not preclude appellant from bringing out circumstances in the pre-trial confrontation which could have affected the weight the jury accorded the in-court identification.

 Given a line-up adjudged by the trial court to be illegal, it was incumbent upon the government to establish by clear and convincing evidence that the in-court identification was based upon observation of the suspect other than at the line-up identification. United States v. Wade, 388 U.S. 218, 240, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Hawkins v. United States, 137 U.S.App.D.C. 103, 420 F.2d 1306 (1969). The on-the-scene observation by Mahoney was based upon substantial opportunity for observation, and the testimony concerning the resulting identification was unequivocal. In addition, the line-up was arranged within hours after the robbery and there is nothing to suggest that it was a significant factor for the in-court identification, or that both the in-court and line-up identifications were not the result of the on-the-scene observation. Mahoney testified that he was positive appellant was the gunman who remained at the top of the stairs, that the latter's image had remained in his mind, that he based his identification upon his observation at the time of the holdup, and that while he had identified the same suspect at the line-up, he would have been able to make the in-court iden-

tification had he not attended the line-up. We are of the opinion that the evidence was sufficient to establish an independent, untainted source.

 There is nothing to suggest that the court did not properly measure the burden of proof and all relevant factors. In the absence of an indication to the contrary, there is a presumption that the trial judge knew the proper standard to apply and applied it. Hightower v. United States, 117 U.S.App.D.C. 43, 325 F.2d 616 (1963), cert. denied, 384 U.S. 994, 86 S.Ct. 1903, 16 L.Ed.2d 1009 (1966). The absence of formal findings on each point of inquiry does not militate against its conclusion. Hawkins v. United States, 137 U.S.App.D.C. 103, 420 F.2d 1306 (1969), *supra*.

We conclude that the trial court did not err in determining that the in-court identification by Mahoney had a source independent from the line-up and in receiving it in evidence before the jury.[1] Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970); United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), *supra*; United States v. Terry, 137 U.S.App.D.C. 267, 422 F.2d 704 (1970); Clemons v. United States, 133 U.S.App.D.C. 27, 408 F.2d 1230, cert. denied, 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969), *supra*; Hawkins v. United States, 137 U.S.App.D.C. 103, 420 F.2d 1306 (1969), *supra*; Gregory v. United States, 133 U.S.App.D.C. 317, 410 F.2d 1016, cert. denied, 396 U.S. 865, 90 S.Ct. 143, 24 L.Ed.2d 119 (1969). *Cf.* Russell v. United States, 133 U.S.App.D.C. 77, 408 F.2d 1280, cert. denied, 395 U.S. 928, 89 S.Ct. 1786, 23 L.Ed.2d 245 (1969).

Appellant next asserts that, notwithstanding the absence of any objection at the trial, the receipt in evidence of a hearsay declaration by the apartment lessee, Pinkett, to Detective Carpenter was fundamental error which should be noticed here.

1. The jury was instructed, among other things, that if the circumstances of identification were not convincing beyond a reasonable doubt it must find the defendants not guilty. All counsel announced that they were satisfied with the charge.

At the trial appellant claimed an alibi. He testified that at the time the robbery was said to have occurred he was already at the Pinkett apartment, having arrived there alone for the purpose of borrowing some money. According to his version, when he heard other persons enter the apartment he had been asleep in the children's bedroom and had had no connection with them.

Detective Carpenter, called by the government, testified on direct examination that immediately upon his entering the apartment he proceeded into a child's bedroom where he found one man (Harris) lying on a bed and one man (Pinkett) on a chest of drawers. He was not asked by the prosecution about any conversation with Pinkett, but during cross-examination by Mr. Shorter, counsel for the defendant Wood, the following exchange occurred:

Q. Now, did you have a conversation with Mr. Pinkett in the apartment?

A. Yes, sir, I did.

Q. Did he tell you anything about the four men who were there?

A. Yes, sir, he did.

Q. What did he say?

A. I asked him first if he—who was the owner of the apartment, and he stated that he was. I asked him if he had heard us knocking on the door and announcing the voice.

Q. I am speaking about what he said about the other four men, not what the conversation he had about the knocking at the door.

A. He stated that the four men who were friends of his entered his apartment while he was lying on the couch, and the door was unlocked. Three of the men were carrying guns. He told him that the police were after them, and shortly after that I heard you knocking on the door.

. . . .

Q. And the four had come in together?

A. Yes, sir.

There was no further clarification or examination by anyone concerning this phase of the testimony. It was not developed by appellant's counsel that his client was not present during the conversation between Detective Carpenter and Pinkett, notwithstanding the context of the examination tended to indicate he was; the conversation was of a nature to have occurred during preliminary contact, and Harris and Pinkett were in the same room when Carpenter first saw them.[2] The absence of any objection to Pinkett's declaration no doubt tended to shunt a further exploration of these circumstances. Nor was any objection or motion made as to this testimony at a subsequent bench conference and hearings out of the presence of the jury when it would have been natural to discuss the matter if counsel had not desired to do so in the presence of the jury. On the contrary, in the context of subsequent discussions between court and counsel an impression can be gathered not only that there was no objec-

---

2. Cross-examination by Mr. Shorter:
 Q. Detective Carpenter, when you went to—when you finally gained access to Apartment 11, by force, was it not?
 A. Yes, sir.
 Q. And was any apartment occupant found?
 A. Yes, sir.
 Q. Mr. Pinkett, was that his name?
 A. That is correct.
 * * * * *
 Q. Which two did you see there?
 A. The occupant of the apartment, Mr. Pinkett, and the defendant Harris.

 Q. And later you saw someone else?
 A. Yes, sir.
 Q. Who was that?
 A. That was Mr. Savage who was found hiding in the closet underneath clothing.
 [The questions were then directed to the finding of two other persons in another room and, following brief inquiry concerning them, the cross-examination returned to Pinkett and the testimony quoted in the text above was given.]

tion but that the propriety of the testimony was recognized.[3]

 Under these circumstances it is difficult to perceive how the receiving of this evidence was, on the part of the court, error at all. Hearsay evidence is not wholly alien to the judicial process and in the absence of objection may be accorded within reason its natural probative effect. Newsom v. United States, 335 F.2d 237 (5th Cir. 1964); United States v. Rosenberg, 195 F.2d 583 (2d Cir.), cert. denied, 344 U.S. 838, 73 S.Ct 20, 97 L.Ed. 687, rehearing denied, 344 U.S. 889, 73 S.Ct. 134, 97 L.Ed. 652 (1952); Petro v. United States, 210 F. 2d 49 (6th Cir.), cert. denied, 347 U.S. 978, 74 S.Ct. 790, 98 L.Ed. 1116 (1954). Moreover, it appears probable from the portion of the record referred to in the margin that Harris was actually present during the conversation between Carpenter and Pinkett, in which event the declaration of Pinkett to Detective Carpenter might have been receivable even over timely objection. See 29 Am.Jur.2d, Evidence § 610; Osborne v. United States, 371 F.2d 913 (9th Cir.), cert. denied, 387 U.S. 946, 87 S.Ct. 2082, 18 L. Ed.2d 1335 (1967).

We are mindful that plain or fundamental defects or errors affecting substantial rights may be noticed here although they were not brought to the attention of the trial court. Rule 52(b), Fed.R.Crim.P. Under different circumstances this court has reversed for related errors or defects, even though they had not been brought to the attention of the trial court. Bartley v. United States, 115 U.S.App.D.C. 316, 319 F.2d 717 (1963); Pinkard v. United States,

99 U.S.App.D.C. 394, 240 F.2d 632 (1957). In other cases the overruling of objections to hearsay evidence has been held to be prejudicial error. See Cannady v. United States, 122 U.S. App.D.C. 99, 351 F.2d 796 (1965); Wright v. United States, 53 U.S.App.D.C. 74, 288 F. 428 (1923).

We have carefully considered the point raised here, but under the facts of this case have concluded that appellant has not demonstrated any plain error or defect in the receipt of Pinkett's declaration which would warrant reversal. Butler v. United States, 122 U.S.App.D. C. 5, 350 F.2d 788 (1965), cert. denied, 384 U.S. 992, 86 S.Ct. 1899, 16 L.Ed.2d 1009 (1966); Harris v. United States, 112 U.S.App.D.C. 100, 299 F.2d 931 (1962); Newsom v. United States, 335 F.2d 237 (5th Cir. 1964).

 We reach a similar conclusion on appellant's final contention that, notwithstanding the absence of any objection, the trial court's comments concerning two defendants who entered pleas of guilty during the trial constituted reversible error.

It is obvious since the jury knew of their involvement at the start that the court was required to make some explanation concerning the sudden absence of Fleming and Savage from the trial. It did so by telling the jury that the cases of these defendants, Savage and Fleming, had been disposed of and the jury was not to speculate on what that disposition was. Later the court deemed it necessary in order to avoid possible confusion arising from the testimony— since there was no dispute that Savage

3. Immediately following Carpenter's testimony a bench conference was held concerning a stipulation as to the corporate existence of Sears, Roebuck & Co. No mention was made of the testimony in question. Thereupon, it was announced that the government rested. Counsel for defendants then argued motions for acquittal. Counsel for Harris, among other things, himself referred to the testimony of Carpenter but erroneously mentioned three as the number of persons said to

have entered the apartment rather than four. Again there was no claim that the testimony was improperly before the jury or that it could not be considered in the case. Later, out of the presence of the jury, the trial judge referred to the same testimony as indicating that four men entered the Pinkett apartment, and noted that this testimony had been unobjected to. Even at this point there was no objection or motion to strike by appellant's counsel or anyone else.

was the man who jumped over the counter and Fleming was the one between the counters—to give some explanation as to the part played by these men. After obtaining the approval of counsel at the bench to so advise the jury, the court made an appropriate explanation and reiterated it when the proceedings justified such repetition, adding that the jury was being so told for the benefit of the three remaining defendants.

Whatever was stated by the court about Savage and Fleming was justified by the circumstances, was checked in advance with counsel for all parties, who indicated they had no objection and could from some viewpoints have been interpreted as tactically advantageous to appellant.

Appellant now says these statements by the trial judge "prejudicially equated [appellant] with Savage and Fleming" and are therefore plain and prejudicial error "even though agreed to by counsel for defendants." The cases relied upon by appellant are readily distinguishable, as they present neither the justification for reference to eliminated defendants which we find in this case nor the mixture of approval and tactical hopes of the parties as indicated by this record. *See* Gaynor v. United States, 101 U.S. App.D.C. 177, 247 F.2d 583 (1957); Payton v. United States, 96 U.S.App.D. C. 1, 222 F.2d 794 (1955). The comments of the trial court in the unusual evidential situation which confronted it were appropriate, fully consented to if not invited by the parties, and did not constitute plain or fundamental error. *See* Butler v. United States, 122 U.S. App.D.C. 5, 350 F.2d 788 (1965), *supra*; United States v. Crosby, 294 F.2d 928 (2d Cir. 1961), cert. denied, 368 U.S. 984, 82 S.Ct. 599, 7 L.Ed.2d 523 (1962).

For the reasons indicated the judgment of conviction is

Affirmed.