**UNITED STATES of America,**

v.

**William E. HAWKINS, Appellant.**

**UNITED STATES of America,**

v.

**Henry H. JONES, Jr., Appellant.**

**Nos. 72–1573, 72–1602.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 27, 1973.

Decided June 11, 1973.

Brackley Shaw, Washington, D. C. (appointed by this court), for appellant William E. Hawkins.

John A. Shorter, Jr., Washington, D. C., with whom William A. Borders, Jr., Washington, D. C., was on the brief, for appellant Henry H. Jones, Jr.

Kevin W. Carmody, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., and John A. Terry and Kenneth Michael Robinson, Asst. U. S. Attys., were on the brief, for appellee.

Before WRIGHT and TAMM, Circuit Judges, and DAVIES,* Senior District Judge.

PER CURIAM:

The series of events culminating in the death of 15 year old Vernon L. Gulledge began at approximately 11:00 o'clock p. m., May 21, 1971, in a shopping center parking lot on Eastern Avenue, Washington, D.C. The appellants, 26 year old Henry H. Jones, Jr. and 21 year old William E. Hawkins, entered the shopping center intending to make a liquor purchase. Prior to entering the liquor store, Jones confronted six youths, all under 16 years of age, standing in the parking lot and, after brandishing a knife, ordered them to leave before he returned. The youths moved to an area in front of a bowling alley and one left to get his older cousin. When Jones returned he again confronted the youths, inquiring why they were still there. At this point the 18 year old cousin and his 21 year old friend arrived on the scene and a fight ensued. Jones and Hawkins lost and left the parking lot. The youths, intending to meet later at a restaurant, split up—three leaving in the cousin's car and three, including the deceased, on foot.

Meanwhile the appellants met two friends with a car and related what had happened. The friends suggested looking for the youths. The four drove down Eastern Avenue to the intersection of Oglethorpe Street where they encountered Gulledge and his two friends who were identified by appellant Jones as, "Yes, that's them." The youths started running in various directions with Gulledge, pursued by Hawkins and Jones, fleeing toward a car parked on the street. Hawkins caught Gulledge at the rear of the car and commenced beating him. Jones then approached, holding a knife, and stabbed Gulledge four times, causing his death. When Theodore Corbett, who had been standing next to the car, tried to intervene he too was stabbed in the stomach, a wound from which he recovered.

A Grand Jury indictment was returned in which Jones and Hawkins were jointly charged in Count One with first degree murder, a violation of 22 D.C.Code § 2401.[1] Jones alone was charged in the second count of assault

---

* Of the United States District Court for the District of North Dakota, sitting by designation pursuant to 28 U.S.C. § 294(d) (1970).

1. Hawkins, as an aider and abettor, under 22 D.C.Code § 105, was charged as a principal.

with intent to kill while armed, a violation of 22 D.C.Code §§ 501, 3202.[2]

At trial neither appellant disputed the basic facts, Jones relying upon insanity as a defense, and Hawkins asserting lack of intent to commit murder. The jury rejected both defenses, finding Jones guilty of both first degree murder and assault with intent to kill while armed; Hawkins was found guilty of second degree murder, a lesser included offense, under 22 D.C.Code § 2403.

The principal issue presented on this appeal, and which we think to be dispositive of it, is whether the prosecutor's improper closing and rebuttal arguments were so highly prejudicial as to require reversal.[3]

Interspersed throughout the Government's closing and rebuttal arguments were the following:

## CLOSING ARGUMENT

\*　\*　\*　\*　\*　\*

"You can read the paper in the big cases and it always is there, isn't it, Sirhan Sirhan, Jack Ruby, Ammidown, Timm and Caldwell, when they were caught red-handed in front of an audience or bevies of people, they turn to insanity because that is their only hope."

\*　\*　\*　\*　\*　\*

"Now, oh, he is dangerous, he is a murderer. But he is not mentally ill. Sirhan Sirhan and Jack Ruby and Ammidown, they didn't fool anybody, nor does he, has he?"

\*　\*　\*　\*　\*　\*

". . . He is not crazy, ladies and gentlemen, or insane, you know somebody passed me in the hall a moment ago and said you'll never get first degree murder—

"THE COURT: Wait a minute let's don't talk about things like that.

"MR. ROBINSON: I[t] was going to be an anology [sic], Your Honor.

"THE COURT: No, you cannot make that analogy and the jury will disregard it.

"MR. ROBINSON: Mr. Robinson [you] might think you can't get first degree murder in the case like this, because it's what somebody might say is 'a Saturday night special.' I mean, you don't have a $50,000 suburban house that you live in like Mrs. Ammidown, you don't have a deputy chief of the city like Heidi Ann Fletcher, a police officer got shot.

"But you see, ladies and gentlemen, this is the worst kind of murder, I mean its the worst. 15 years old, he never even knew Watusi Jones. Mrs. Ammidown at least knew Mr. Ammidown, there was friction. He never even knew the man that murdered him."

\*　\*　\*　\*　\*　\*

At the conclusion of the Government's closing argument both defense counsel moved for a mistrial based on the Government's comparison with the *Ammidown* case. This motion was denied.

## REBUTTAL

\*　\*　\*　\*　\*　\*

"How many policemen die a year in this country in the line of duty? How many in Washington D.C. alone? How many officer Sigmons get shot down in a bank robbery by a Mr. Timm? Do we just cover them all, these deaths, with a blanket of insanity?

"And let them all go to a nice hospital under some kind of a charade of a defense? Or do we stand up tall and we defend those men who lost their lives in the line of duty? We stand up tall. Vernon Gulledge never ac-

---

2. Jones was also charged in Count Three with assault with intent to kill, a violation of 22 D.C.Code § 501, and in Count Four with assault with a dangerous weapon, a violation of 22 D.C.Code § 502. These two counts were dismissed during trial on Government motion.

3. The remaining problems raised, while considered, would not warrant reversal and a discussion thereof would have no precedential value.

cepted the responsibility of a policeman to die in the line of duty. Vernon just had the responsibility of growing up."

\* \* \* \* \* \*

". . . He was intelligent and Napoleon was a genius and he tried to wreck all of Europe. He bolled [*sic*] over anybody that got in his way. Hitler was a genius in his own way. But he's not a Hitler or a Napoleon, but he ran in gangs, gangs from which all the gangsters have gone to jail, and what I am saying, ladies and gentlemen, it is time for the final gangster to go to jail and not to a hospital."

\* \* \* \* \* \*

"You see, ladies and gentlemen, if the story that Mr. Hawkins told is true, maybe he is guilty of simple assault. I want you to look and see how fair the United States can be. We don't say he had anything to do, Mr. Hawkins had anything to do with stabbing Mr. Corbett, do we? And so you will notice our responsibility there to try to be just by not including him in the indictment for assaulting Mr. Corbett; isn't that true? He is not charged with assaulting Mr. Corbett. But he can't lean on his non-participation in that incident to get out of the murder he assisted in committing."

\* \* \* \* \* \*

■■ Here, as in United States v. Clinton L. Phillips,[4] the same Government attorney resorted to arguments clearly designed to arouse the passion and prejudice of the jury. When a defendant's sole defense is insanity, a prosecutor cannot be permitted to compare that defense to other infamous crimes where that defense has been raised and rejected.

Once again, as in United States v. Clinton L. Phillips, *supra*, we quote from Brown v. United States, 125 U.S. App.D.C. 220, 224, 370 F.2d 242, 246 (1966):

"While such an argument is always to be condemned as 'an appeal wholly irrelevant to any facts or issues in the case,' Viereck v. United States, 318 U.S. 236, 247, 63 S.Ct. 561, 566, 87 L. Ed. 734 (1943), and as a dereliction of the prosecutor's high duty to prosecute fairly, see Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), in the context of current events, raising the spectre of [heinous crimes] . . . was an especially flagrant and reprehensible appeal to passion and prejudice. Although the prosecutor 'may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.' Berger v. United States, *supra*, 295 U.S. at 88, 55 S.Ct. at 633; Viereck v. United States, *supra*, 318 U.S. at 248, 63 S.Ct. at 567."

■ For the reasons set forth, the judgment of conviction of Henry H. Jones, Jr. is reversed. It necessarily follows that the judgment of conviction of William E. Hawkins must also be nullified.

Reversed.

---

4. 155 U.S.App.D.C.——, 476 F.2d 538 (decided May 16, 1973) (per curiam).