**UNITED STATES of America**

v.

**Jonas WHITMORE, Jr., a/k/a Roscoe R. Jackson, Appellant.**

**No. 72–1530.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 9, 1973.

Decided June 29, 1973.

---

4. 155 U.S.App.D.C.——, 476 F.2d 538 (decided May 16, 1973) (per curiam).

John H. Caldwell, Washington, D. C. (appointed by this Court), for appellant.

Raymond Banoun, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and Kenneth Michael Robinson, Asst. U. S. Attys., were on the brief, for appellee.

Before LEVENTHAL and ROBB, Circuit Judges, and WILLIAM J. JAME-

SON,* Senior United States District Judge for the District of Montana.

ROBB, Circuit Judge:

The appellant and a co-defendant, one Darlene C. Wheeler, were convicted by a jury on an indictment charging them with unlawful possession with intent to distribute 10,585 milligrams of heroin, in violation of the Controlled Substances Act (21 U.S.C. § 841(a) (1972)). Both defendants appealed, but the defendant Wheeler did not prosecute her appeal.

On his appeal Whitmore contends that (1) the District Court erred in refusing to require the government to produce an informant; (2) the court erred in failing to allow the foreman of the jury to qualify or explain the verdict; (3) the Controlled Substances Act, 21 U.S.C. § 841(a) is unconstitutional; and (4) the prosecutor's closing and rebuttal arguments to the jury were improper and prejudicial.

■ The appellant's first three contentions require little discussion. The informant merely furnished information which was the basis for a search warrant obtained by the police. In the circumstances the refusal to require the informant's appearance was not error. United States v. James, 151 U.S.App.D. C. 304, 466 F.2d 475 (1972); United States v. Skeens, 145 U.S.App.D.C. 404, 449 F.2d 1066 (1971). The attempted explanation by the foreman of the jury related only to the verdict against the defendant Wheeler; there was no question about the verdict in Whitmore's case. Since we reverse on other grounds we do not reach the appellant's claim that the Controlled Substances Act is unconstitutional.

We find merit in the appellant's attack on the prosecutor's arguments.

The appellant and Wheeler were arrested in Apartment 102 at 2505—12th Place, S.E. The police entered the apartment pursuant to a search warrant. The warrant was supported by the affidavit

* Sitting by designation pursuant to 28 U.S.C. § 294(d) (1970).

of a police officer which stated in substance that an informant had told the police that he had purchased narcotics from a man named Roscoe at Apartment 102, and that the police had thereafter sent the informant to the apartment, and waited outside while the informant purchased narcotics from Roscoe. A motion to suppress, challenging the sufficiency of the supporting affidavit, was overruled by the district judge.

The proof for the government at trial was that the police seized approximately 10,585 milligrams of heroin in Apartment 102, when the appellant and Wheeler were arrested. This amount of heroin was enough for 210 capsules. (Tr. 38). In addition, the police found strainers and measuring spoons used in the mixing of heroin, and two packages of powder which could be used for "cutting". (Tr. 102–103). The seized heroin was found in various places in the apartment and outside the window where some of it had been thrown by the appellant.

The search warrant and supporting affidavit were not in evidence before the jury. During the trial, however, the prosecutor repeatedly referred to them and their contents. Thus the following occurred in the direct examination of Officer Spriggs by the prosecutor:

Q. By the way, Officer Spriggs, you fellows were in there for [sic] a search warrant, what were you searching for?

A. Narcotics drugs, narcotic paraphernalia.

Q. Any kind of drug in particular?

A. Well, his search warrant was—

[Defense Counsel]: I object, Your Honor.

By [Prosecutor]:

Q. Did you know what kind of drug you were looking for?

[Defense Counsel]: Objection, Your Honor.

THE COURT: Does it make any difference?

[Prosecutor]: I think it would be interesting to the Court and jury what they were looking for, what they found.

THE COURT: Do you object?

[Defense Counsel]: Yes, Your Honor.

THE COURT: Sustained. (Tr. 59).

The prosecutor was at pains to prove that the appellant used the name "Roscoe". (Tr. 116, 213–216). He introduced in evidence photographs of Whitmore found in the apartment, which identified Whitmore as Roscoe. (Tr. 176–179, 213, 214).

On cross examination of the appellant the prosecutor bore down heavily on the name Roscoe, the search warrant, and the supporting affidavit. His cross examination included the following:

By [Prosecutor]:

Q. *Did the police tell you they were looking for a man named Roscoe when they came in that apartment?*

A. They didn't tell me much of anything.

Q. Did they give you a copy of that search warrant?

A. No, they did not.

Q. *Did you ever see the affidavit to that search warrant?*

A. Affidavit? I don't know what affidavit is, would you explain that to me?

Q. Let me pin it down this way: *did the police ever indicate to you at all that they were looking for somebody named Roscoe in that apartment?*

A. At any time that they were there or afterwards?

Q. Any time?

A. No, not the police, but in the warrant later on I seen that they were looking for Roscoe.

Q. *They had reason to believe that Roscoe was selling dope, didn't they?*

A. Yes.

Q. And in fact you gave your name, didn't you, to the police as Roscoe Jackson, but before you learned that they were looking for Roscoe, isn't that right?

A. No, I did not.

Q. You didn't give your name as Roscoe Jackson?

A. No, I did not.

Q. Don't you go by the name of Roscoe Jackson?

A. I do not.

Q. You do not. All right. (Tr. 173–174) (Emphasis added).

\* \* \* \* \* \*

Q. Didn't you give the police the name of Roscoe Jackson, that would be a J, wouldn't it?

A. No, I did not.

Q. *Isn't it a fact that you backed away from the name or [sic] Roscoe since you learned the police were looking for a man named Roscoe selling dope?*

A. Pardon me?

Q. *Isn't it a fact that you backed away from the name or [sic] Roscoe since you learned the police were looking for somebody named Roscoe selling dope?*

A. No, that's not true. (Tr. 179) (Emphasis added).

\* \* \* \* \* \*

Q. *You mean they were there with a search warrant for Roscoe, they broke in your apartment, they say they found 23 dime bags of heroin, and you know nothing about it?* (Tr. 187) (Emphasis added).

Having laid this foundation by his cross examination of Whitmore and by his proof that Whitmore was "Roscoe" the prosecutor used it as a basis for insinuation and suggestion in his closing and rebuttal arguments. Thus, he said:

*They had a United States Magistrate's search warrant looking for a man named Roscoe that was allegedly selling dope,* and it was for the address where this defendant lived, at 2505 12th Place, S. E., Apartment 102.

*It wasn't an accident that they were at that apartment. They had taken the time hours before, hadn't they, to go down to the United States Magistrate and get a search warrant. . . .* (Tr. 218) (Emphasis added).

\* \* \* \* \* \*

*Now, Mr. Jackson or Mr. Whitmore, whatever it is, did not know at that time that the police were looking for a man named Roscoe that was selling dope* so when the police asked him his name, he quickly gave the name of Roscoe Jackson after all that's the name he is using down there, isn't that right? And that is what happened in this particular case. (Tr. 219) (Emphasis added).

\* \* \* \* \* \*

They have $230, about, worth of heroin in their apartment, nobody else is there, *the police have reason to believe that somebody named Roscoe is selling heroin, they come there with an affidavit saying Roscoe on it,* they get there, they have to break the door in because this man certainly is not going to open that door, what do you think he is doing all this time? (Tr. 220) (Emphasis added).

\* \* \* \* \* \*

These people were cutting and mixing heroin in that apartment and the police knew about it, *and they knew that Roscoe was doing it* and they came down there in the middle of the night when it would be least expected and they broke into that place after they refused to open the door, and they found what they were after, didn't they? (Tr. 223) (Emphasis added).

\* \* \* \* \* \*

*Now, sure we don't have pictures, Polaroid pictures of these two defendants selling heroin, that is not the way it works, ladies and gentlemen. You know how it is on the street. People make contact, you get information, you put it together and you get a search warrant.* (Tr. 239) (Emphasis added).

\* \* \* \* \* \*

These police officers were all consistent, ladies and gentlemen, in put-

ting that heroin in that room and putting those pictures in that room as if they were in somebody's home. *They were looking for Roscoe, they found Roscoe.* Roscoe says my name is Roscoe Jackson. (Tr. 243) (Emphasis added).

\*    \*    \*    \*    \*    \*

Because *I submit to you there was no one living there except some dude named Roscoe that was selling heroin.*

THE COURT: Mr. [Prosecutor], just a little quieter, please. (Tr. 244) (Emphasis added).

The prosecutor embellished his theme by telling the jury that people like the defendants "tear up the lives of many young people, they *literally wreck the lives of people in this city, don't they? You see they sell heroin* \* \* \* these are the kind of people *that are degrading this city.*" (Tr. 220) (Emphasis added).

■ The defendants objected to the prosecutor's arguments and moved for a mistrial, but their motions were overruled. (Tr. 225, 245).

There was no direct evidence before the jury that the appellant had sold narcotics to anyone; the only proof touching that point was the inference that might have been drawn from the evidence seized by the police in the apartment.

The prosecutor in his arguments was plainly telling the jury that the police had information and an affidavit stating that Roscoe, meaning the defendant, was selling heroin. Although they were not ·in evidence, he was deliberately putting that information and affidavit before the jury by suggestion and insinuation. There is no other reasonable explanation for his repeated invocation of the name Roscoe and his pointed references to the search warrant and the supporting affidavit. The name was significant only in the context of the warrant and the affidavit; that the defendant was known as Roscoe had no bearing upon the question of his guilt on the charge that he possessed narcotics. Nevertheless the prosecutor used the irrelevant name as a handle for dragging the warrant and affidavit before the jury as evidence that the defendant was "selling dope"—evidence to which the prosecutor repeatedly referred.

■ The prosecutor's conduct was not an isolated, momentary aberration occurring in the heat of trial, but was a deliberate, calculated and successful effort to prejudice the defendant by references to matter that was not in evidence. Such tactics cannot be tolerated. *See* Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 134 (1935); United States v. Phillips, 155 U.S.App. D.C. ——, 476 F.2d 538 (1973).

The United States Court of Appeals for the Ninth Circuit recently commented on the conduct of a prosecutor:

Some prosecutors, and the prosecutor in this case is one of them, do not have sense enough, even in a case in which the government holds all the cards, not to indulge in questionable tactics that may result in a reversal. Over the years, he has caused this Court to do a lot of unnecessary work. United States v. Ames (No. 72–3152, 9th Cir., decided May 22, 1973).

The comment is pertinent, since this is the third case in which improper argument by the same prosecutor has required us to reverse. *See* United States v. Phillips, *supra*; and United States v. Hawkins and Jones, 156 U.S.App.D.C. ——, 480 F.2d 1151 (1973) (Nos. 72–1573, 72–1602, D.C. Cir., decided June 11, 1973).

The judgment is reversed.