**UNITED STATES of America**

v.

**Anthony A. FREEMAN, Appellant.**

**No. 73–1982.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 12, 1974.

Decided June 23, 1975.

Michael J. English * (appointed by this Court), with whom Sherman L. Cohn, Washington, D. C. (appointed by this Court), Monica Gallagher, Washington, D. C., and Robert A. Shlachter,* were on the brief for appellant.

James M. Hanny, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty.,

John A. Terry and John O'B. Clarke, Jr., Asst. U. S. Attys., were on the brief for appellee.

Before BAZELON, Chief Judge, and ROBINSON and MacKINNON, Circuit Judges.

Opinion for the Court filed by Chief Judge BAZELON.

BAZELON, Chief Judge.

█ Appellant raises two points in contesting his conviction for armed robbery. He argues first that the trial court erred in admitting hearsay testimony concerning the identity of one of the two holdup men involved. He also alleges prosecutorial misconduct in certain portions of the Government's summation. Both these issues are raised for the first time on appeal. Our task, therefore, is to determine whether the alleged defects warrant reversal under the plain error rule, after considering their combined effect on the "jury's fact-finding function." [1]

According to the testimony of the complaining witness, Earnest Clark,[2] the robbery took place at about one o'clock in the afternoon at 8th and L Streets in Washington. Clark stated that he was approached by a man who asked for money and that when he refused, the man pulled a gun and struck Clark in the head. Clark wrestled momentarily with a second man, who had come up unnoticed behind him, and when his two assailants fled, he discovered that his wallet had been taken. Police officer Mullarky testified that he found Clark at the scene bleeding profusely from a cut over the eye and in a highly agitated state.[3]

Mullarky's testimony indicates that he questioned several witnesses there, none of whom would give his name, and ascertained from one of them that one of the men involved was nicknamed "Dick-

* Entered appearances pursuant to Rule 20 of the General Rules of this Court.

1. United States v. Wharton, 139 U.S.App.D.C. 293, 433 F.2d 451, 457 (1970).

2. Tr. at 10–27.

3. *Id.* at 74–75.

ie." [4] This name was broadcast over police radios with a physical description of the pair. Police officer Fant later testified that on hearing the broadcast, he recalled an individual by that name and of the general description of one of the assailants living at 914 M Street.[5] On the strength of Fant's response to the look-out, police converged on the M Street address, where they saw appellant leave the house and run toward a playground nearby. Appellant was arrested in a recreation shack on the grounds and immediately identified by Clark, who had accompanied the police, as "the one who robbed me." [6]

Appellant presented an alibi defense. He stated at trial that he had been playing basketball on the playground that morning with a friend, Lawrence Tucker, and others, and had stopped playing about one o'clock.[7] When the police arrived not long afterwards, appellant claimed, he was returning to the shack on the playground to get his wallet and cigarettes, which he had left there during the game. The police found no money or weapons on the appellant at the time of his arrest, and his alibi was corroborated by the testimony of Lawrence Tucker.[8]

## I.

Appellant contends that Mullarky's recounting of the "Dickie" tip was inadmissible as hearsay, a secondhand statement offered as proof of the matter asserted.[9] The Government's answer is simply that the testimony was elicited to explain why the police went to 914 M Street, where the arrest was made. For that purpose it made no difference whether "Dickie" were in fact connected with the robbery, and therefore the testimony was not hearsay at all. This view, however, ignores the Government's subsequent exploitation of the testimony, which went much beyond merely filling in the gaps of the police account.

In his account of a meeting with "Dickie" several months prior to the robbery, Officer Fant remembered that the appellant had walked over and introduced himself as "Dickie's brother." [10] A close friendship between "Dickie" and appellant was established by the Government in its cross-examination of both appellant [11] and Lawrence Tucker.[12] The Government also ascertained from Lawrence Tucker that "Dickie" was indeed Lawrence's brother; that his real name was Ronnie Tucker; and that he lived with Lawrence at the M Street address.[13]

The Government's development of the "Dickie" theme continued through summation. The prosecutor stressed that the description of one of the assailants broadcast over police radios matched the description which Lawrence Tucker had given of his brother Ronnie.[14] Even more pointedly, the prosecutor stated: "What about Mr. Tucker, Mr. Tucker, friend of Mr. Freeman. His own brother might be involved in this, Dickie Tucker. What motive [for lying] does he have?" [15] In short, relying implicitly on Mullarky's testimony as evidence that "Dickie" was indeed a participant in the robbery, the Government undermined appellant's case by showing both that appellant was a good friend of "Dickie's" (suggesting appellant as a likely associate in crime) and that Lawrence Tucker was "Dickie's" relative (adding a motive for Tucker to lie on appellant's behalf).

---

4. *Id.* at 76–77. The witness who made the identification was not produced at trial, nor did any other testimony provide a basis for believing that one of the assailants was "Dickie."

5. *Id.* at 105–07.

6. *Id.* at 84. This is Officer Mullarky's version.

7. *Id.* at 172–74.

8. *Id.* at 157–61.

9. *See* McCormick, Evidence § 246, at 584 (2d ed. 1972).

10. Tr. at 105.

11. *Id.* at 188.

12. *Id.* at 162.

13. *Id.* at 162–63.

14. *Id.* at 215.

15. *Id.* at 226.

For these purposes the testimony was hearsay.

Although the problem could have been avoided entirely simply by restricting the officer's testimony to a statement that he received certain information leading him to the address, the "Dickie" testimony may not have been so prejudicial to appellant that it was inadmissible even for the limited purpose of showing that the officers did not "act in a vacuum." [16] But even granting this for purposes of analysis, the question remains whether the trial court erred in failing to warn the jury against considering the tip in its hearsay sense.

In United States v. McClain,[17] we held that

> whenever evidence is admitted only for a limited purpose, it is plain error, in the absence of manifest waiver, to omit an immediate cautioning instruction.[18]

In *McClain* the potential prejudice of the evidence of prior fights between the defendant and his wife was immediately apparent and the Government itself acknowledged that, if the evidence were allowed in, an instruction limiting its use to the issue of malice would be appropriate. In this case, it was not clear at the time of Mullarky's testimony what, if any, bearing "Dickie's" presence at the scene might have on the main issues in the case.[19] This may explain why the testimony slipped in unremarked by either the trial judge or the defense attorney,[20] and may justify the failure to respond with an immediate instruction.[21]

But the fact remains that central elements in the case were affected by subsequent development of the hearsay dimension of the "Dickie" tip. And even if it is assumed that this impact could have been mitigated by an instruction at some later point, such as the charge to the jury,[22] no such instruction was given.

16. *See* United States v. Hernandez, 441 F.2d 157, 162–64 (5th Cir. 1971). *Hernandez* distinguished a number of other Fifth Circuit cases in which the admission of such testimony was held error on the grounds that in those cases "[t]he testimony related to information that pointed directly to the suspects involved." *Id.* at 164. *Compare* United States v. Mack, 151 U.S.App.D.C. 162, 466 F.2d 333, cert. denied sub nom. Johnson v. United States, 409 U.S. 952, 93 S.Ct. 297, 34 L.Ed.2d 223 (1972); Overton v. United States, 403 F.2d 444 (5th Cir. 1968) *with* United States v. Brown, 160 U.S. App.D.C. 190, 490 F.2d 758 (1973).

17. 142 U.S.App.D.C. 213, 440 F.2d 241, 246 (1971).

18. A number of subsequent cases have limited the breadth of this holding, but none has questioned its fundamental soundness. *See e. g.,* United States v. Henson, 159 U.S.App.D.C. 32, 486 F.2d 1292 (1973); United States v. Fench, 152 U.S.App.D.C. 325, 470 F.2d 1234 (1972); cert. denied sub nom. Blackwell v. United States, 410 U.S. 909, 93 S.Ct. 964, 35 L.Ed.2d 271 (1973); United States v. Mizzell, 146 U.S. App.D.C. 399, 452 F.2d 1328 (1971); United States v. Thomas, 148 U.S.App.D.C. 148, 459 F.2d 1172 (1972).

19. It is not clear from the trial record how much the defense attorney knew about "Dickie" and his relationship to appellant and Lawrence Tucker. The prosecution made no reference to "Dickie" in its opening remarks, nor was any proffer made before the testimony came in. In his cross-examination of Mullarky, the defense attorney seemed intent chiefly on establishing that "Dickie" was not appellant. Later in the trial, after the actual import of the "Dickie" testimony had begun to surface, the defense attorney sought to mitigate its impact by eliciting from appellant that "Dickie," who by then had been identified as Lawrence Tucker's brother, had brothers other than Lawrence who fit appellant's description, raising the suggestion that one of the brothers, rather than appellant, participated in the robbery with "Dickie."

20. In *McClain*, the defense attorney registered immediate objections to the admission of the evidence of prior acts, and indeed the trial judge made an initial ruling that the evidence was inadmissible.

21. For a development of the proposition that *McClain* may not require immediate instructions in all cases, see United States v. Fench, *supra* note 18. *Fench* distinguished *McClain* as a case in which the evidence admitted was "highly prejudicial" and therefore the need for an immediate instruction was readily apparent.

22. For a discussion of circumstances under which a general instruction is inadequate, see United States v. Leonard, 161 U.S.App.D.C. 36, 494 F.2d 955, 965 (1974).

The Government maintains rather vigorously that the defense waived any right to such an instruction by expressing general satisfaction with the charge. We have held, however, that this sort of general agreement does not constitute "a clear statement that the particular instruction is being waived," as required by *McClain*.[23]

■ Although the insidious effect of the Government's development of the "Dickie" hearsay is easily underestimated, we do not reach the question of whether it is sufficient to warrant reversal alone. Where there are numerous errors in a trial, the reviewing courts must weigh the cumulative impact.[24]

### II.

The portions of the prosecutor's summation to which appellant takes exception appear in the following paragraph:

> You have another corroborating factor, Mr. Freeman himself. Why would he have to take the stand? Why would he testify they were all playing basketball until one o'clock, decided to walk across the street and then go back and was arrested? . . . Unless, ladies and gentlemen, he knows that he is the one who committed the offense and he tried to run away the first time, that didn't work and now

he's trying to get himself out of it any other way he can. And can't you tell from all of the evidence, can't you put it down that the reason that he told you the stories was because of his background? Doesn't the evidence lend that conclusion?[25]

Appellant's first objection goes to the prosecutor's reference to his decision to take the stand as indicative of his guilt ("another corroborating factor"). His argument relies on analogy to Griffin v. California,[26] which held that the prosecution overstepped its bounds in commenting on defendant's failure to take the stand, thereby chilling his fifth amendment right not to incriminate himself.[27] Appellant contends that the prosecutor's reference impinged impermissibly on his right to take the stand, which derives from his general right to present witnesses in his defense. The Supreme Court has identified this right as "a fundamental element of due process of law."[28] It is not necessary to decide the question thus raised, whether the remark so prejudiced appellant's right as to amount to its denial,[29] in order to appreciate its seriousness.

■ Against this background, we focus on what we perceive as the lack of any probative value in the mere fact that appellant took the stand.[30] Isolated

---

**23.** United States v. Thomas, *supra* note 18, 459 F.2d at 1174.

**24.** United States v. Jones, 157 U.S.App.D.C. 158, 482 F.2d 747 (1973).

**25.** Tr. at 217.

**26.** 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

**27.** *Griffin* has recently been extended to prohibit comment on consultation with an attorney after the crime but prior to arrest. United States ex rel. Macon v. Yeager, 476 F.2d 613 (3d Cir.) cert. denied, 414 U.S. 855, 94 S.Ct. 154, 38 L.Ed.2d 104 (1973).

**28.** Washington v. Texas, 388 U.S. 14, 23, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); *see* Walder v. United States, 347 U.S. 62, 65, 74 S.Ct. 354, 98 L.Ed. 503 (1954).

**29.** *See* Donnelley v. DeChristoforo, 416 U.S. 637, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974).

**30.** Probative value has been a central factor in the courts' determination of the permissibility of prosecutorial comment on other aspects of defense strategy, such as the decision not to call a witness who might reasonably be expected to verify defendant's alibi. Courts usually allow prosecutors to draw an inference from the failure to produce such a witness that his or her testimony would not have supported the alibi. *See* United States v. Cox, 428 F.2d 683 (7th Cir. 1970) cert. denied, 400 U.S. 881, 91 S.Ct. 127, 27 L.Ed.2d 120 (1972); United States v. Banks, 426 F.2d 292 (7th Cir. 1970); United States v. Banks, 426 F.2d 292 (6th Cir. 1970); Gass v. United States, 135 U.S.App. D.C. 11, 416 F.2d 767 (1969). But comment has been held impermissible where it was shown that the defendant did not know the whereabouts of the potential witness or that the witness was otherwise unavailable, *i. e.*, when no rational bases for the inference existed. *See* Gass v. United States, *supra*, at 775.

from the substance of appellant's testimony, as it was by the prosecutor's question-comment in this instance, this fact has no rational bearing either on appellant's guilt or on his credibility. The inferences which the Government sought to draw from it thus could only serve to confuse and mislead the jury. Such a tactic does not become the prosecutor, as an exemplar of fairness and justice in the criminal system.[31]

■ The appellant also objects to the reference to his "background," which seems intended primarily to reflect on appellant's credibility but is also suggestive on the issue of guilt. There is no evidence on the record that could have supplied content to the word "background." No prior arrests or convictions were introduced; in fact, defense counsel stated in summation that the defendant "was a young man with no prior record."[32] There was some evidence that the appellant had been out of work at the time of his arrest and was seeking employment, but contemporaneous circumstances are hardly synonymous with "background." Thus, the reference was "an appeal wholly irrelevant to any facts or issues in the case," which called upon the jury to speculate about appellant's past in a prejudicial manner,[33] and was therefore impermissible.[34]

■ The Government downplays the possible impact of these statements by contending they were fleeting, inconsequential references in a lengthy statement. Fleeting they may have been, but they came one after another in what may be considered a climactic passage of the summation, characterized by a series of rhetorical questions fired at the jury. The Government further minimizes their impact by failing to consider them together with the hearsay issue. The error of this sort of compartmentalization is particularly apparent in this case, where the prosecution, as we have seen, also used summation to emphasize the implications of the "Dickie" hearsay on the issues of appellant's guilt and Lawrence Tucker's credibility. The adverse impressions generated by both defects, then, were fresh in the minds of the jurors as they sat down to their deliberations.

Against the potential of these impressions to influence the jury, we may test the strength of the Government's case. The prosecution depended chiefly on the testimony of its complaining witness. It was through his testimony alone that appellant was identified as one of the robbers, and although there were others at the scene who got a look at the men who attacked Clark, none of these people were produced as witnesses. The Government's case was opposed, of course, by appellant's alibi defense. And although the complaining witness's identification was corroborated to some de-

**31.** *See* Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1934); Taylor v. United States, 134 U.S.App.D.C. 188, 413 F.2d 1095, 1096 (1969).

In the only other case we have found addressing this question, Massachusetts v. Stout, 356 Mass. 237, 249 N.E.2d 12 (1969), the court similarly held comment on defendant's decision to take the stand improper, although it did not elaborate the reasons for its holding.

**32.** Tr. at 225.

**33.** The prejudice to appellant may have been compounded by an inference which the jurors could have drawn that the prosecutor himself had knowledge of appellant's background which would have been adverse to appellant if revealed.

**34.** As with the hearsay testimony, defense counsel did not object to these statements, nor

did he request a corrective instruction from the trial judge. We have recognized, however, that counsel's failure to object to elements of the prosecutor's closing argument is not dispositive. United States v. Jones, *supra* note 23, at 754, *quoting* United States v. Young, 150 U.S.App.D.C. 98, 463 F.2d 934, 940 (1970). Failure to object in this context if not inadvertent, may be attributable to counsel's fear that an objection will only focus attention on the remarks which he wishes to have the jury ignore, *see* United States v. Sawyer, 347 F.2d 372, 374 (4th Cir. 1965), or that the jury will view an interruption as disruptive and dilatory. A rule requiring an objection might thus allow the prosecutor, through his own missteps, to put the defense between a rock and a hard place. Basic considerations of fairness require that the defendant not be put to such a choice.

gree by the testimony of police officers concerning the circumstances of appellant's arrest,[35] the case went to the jury essentially as Clark's word against appellant's and Tucker's.[36] This is not to suggest that an errorless trial would necessarily or even probably have resulted in acquittal,[37] but given the narrow base on

35. The victim's description of one of his assailants at the scene of the crime, "Negro male in his twenties, 6 feet, and big and wearing a blue shirt", matched appellant, who was wearing a blue shirt when arrested; the appellant ran out of the back of the house at M Street when police arrived and continued to run when pursued by police who yelled at him to stop (as the prosecutor noted in his summation, however, "there are many reasons why a person would run"); the arrest was made not long after the crime occurred and not far from the scene.

36. Under similar circumstances in Cannady v. United States, 122 U.S.App.D.C. 99, 351 F.2d 796 (1965), we found the Government's case "thin." The facts in *Cannady* were summarized by the court as follows:

Appellant was convicted of robbery and simple assault. . . . The Government's case rested on the testimony of the complaining witness . . . .. He stated that [two] men beat him and robbed him of about $180, that the following afternoon, he was in a beer parlor and saw appellant enter; he recognized him as one of his assailants. He testified that appellant saw him and "broke and ran out of the place." He followed appellant outside and told his story to a Park Policeman who followed appellant, arresting him in the hotel in which he was staying.

122 U.S.App.D.C. at 100, 351 F.2d at 797. In *Cannady*, as in this case, the stolen money was not found on the defendant at his arrest, or at any time thereafter.

In *Cannady*, apparently, the complaining witness had not talked to police prior to seeing the defendant in the beer parlor, thereby eliminating the possibility of matching descriptions, and his second contact with defendant was more remote in time and place from the crime than Clark's, which occurred within a half an hour of his robbery and within a block or so of where it happened. At the same time, the defendant in *Cannady* had no other witness to corroborate his alibi. Thus, although the Government's presentation in this case may not be described as "thin," it does not, when balanced against what defendant was able to marshall in his defense, produce the kind of one-sidedness that would allow a court to regard assertions of prejudice lightly.

which the prosecution rested, we cannot say—using the test established in Kotteakos v. United States [38]—"with fair assurance that the jury was not substantially swayed" by the combined effect of these errors.[39] Assessing prejudice is an elusive task, requiring appellate judges to weigh the impact of trial defects on

37. In addition to the factors tending to corroborate Clark's identification, note 35 *supra,* there was also competent evidence casting doubt on appellant's alibi: e. g., testimony by Officer Fant that he did not recall seeing anyone playing basketball at the playground when he passed there sometime after 10:00 A.M. on the morning of the robbery; testimony that appellant was not sweating when he was arrested as he might have been if he had played basketball hard all or most of the morning.

There are also factors which the jury might have taken as damaging to the complaining witness's identification. First, Mr. Clark conceded that he had had a beer with a friend just before the robbery took place, and the appellant testified that he thought the complaining witness was "slightly intoxicated" when they confronted each other at the playground. He was also very "agitated," both when police found him at the scene of the crime, and when he made the identification.

38. 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); *see* United States v. Wharton, *supra* note 1, at 461.

39. There are cases to suggest that reversal on a plain error rationale may require more than a simple finding that the error was not harmless. *E. g.,* United States v. Leonard, 161 U.S. App.D.C. 36, 494 F.2d 955, 960–61 (1974); United States v. Grasso, 437 F.2d 317, 319 (3d Cir.), cert. denied, 403 U.S. 920, 91 S.Ct. 2236, 29 L.Ed.2d 698 (1971); United States v. Reed, 446 F.2d 1226 (8th Cir. 1971). Fed.R.Crim.P. 52(b), however, makes plain errors and trial defects cognizable if they affect "substantial rights," the precise standard under which Fed. R.Crim.P. 52(a) requires courts to determine whether an error is harmless. And we find numerous cases, involving defects similar to those involved in this case, where courts have reversed on plain error without finding a "manifest miscarriage of justice" or similarly grave abuse. *E. g.,* United States v. McClain, *supra* note 17; King v. United States, 125 U.S. App.D.C. 318, 372 F.2d 383 (1967); Corley v. United States, 124 U.S.App.D.C. 351, 365 F.2d 884 (1966); United States v. Sawyer, *supra* note 34. In any event, we think the harm to appellant is sufficient to meet a threshold higher than simple prejudice, if one is appropriate, particularly in light of the presumption established by *Kotteakos, see* text accompanying note 40 *infra.*

the minds of other people, not their own, but we are confirmed in our result by *Kotteakos'* teaching that serious doubts on the issue should be resolved in defendant's favor.[40]

By way of postscript, we believe that the circumstances of this case warrant reiteration of the warning to prosecutors delivered recently in United States v. Bell: "It may be that the day is near when reversal instead of admonition may become a necessary prophylactic tool to insure that prosecutorial arguments hew to the law."[41] Except in cases of abuse with strong potential for harm to the defendant,[42] the custom of courts in responding to instances of courtroom misconduct by prosecutors has been to issue a verbal reprimand and affirm under the harmless error rule.[43] Despite these verbal slaps-on-the-wrist, prosecutorial misconduct continues to provide "one of the most frequent contentions of defendants on appeal."[44] Our experience thus suggests that courts must begin to take prophylactic considerations together with probable prejudice to defendant in decid-

ing whether to reverse.[45] We have no need to rely on such considerations in this case, as we have found reversal to be warranted on a traditional analysis.

Reversed and remanded for a new trial.

MacKINNON, Circuit Judge (dissenting):

Freeman was convicted by a jury of a vicious armed robbery and on this appeal, with new counsel, claims he was denied a fair trial because of (1) the admission of one item of hearsay evidence, (2) the prosecutor's reference to his "background," and (3) the prosecutor's reference to his taking the stand. None of these objections were raised at any time during the trial.

The essence of Officer Mullarky's testimony was that a witness at the scene told him that one of the robbers was nicknamed "Dickie." If this was hearsay, it was hearsay at the moment it was introduced in evidence. A timely

**40.** 328 U.S. at 764, 66 S.Ct. 1239.

**41.** 165 U.S.App.D.C. 146, 506 F.2d 207 (1974).

**42.** *See e. g.,* United States v. Hawkins, 156 U.S.App.D.C. 259, 480 F.2d 1151 (1973); United States v. Phillips, 155 U.S.App.D.C. 93, 476 F.2d 538 (1973) (reference to defendant as comparable to James Earl Ray, Sirhan Sirhan, Richard Speck and Jack Ruby); United States v. Whitmore, 156 U.S.App.D.C. 262, 480 F.2d 1154 (1973) (insinuations that defendant, who was on trial only for possession of narcotics, was also a pusher); *See also* United States v. Haywood, 136 U.S.App.D.C. 300, 420 F.2d 142 (1969) (prosecutor's suggestion that paucity of Government's witnesses was a result of intimidation by defendant) (the conviction was reversed on other grounds).

**43.** *See, e. g.,* United States v. Jones, *supra* note 23 (reference to defendant as "executioner"); United States v. Hines, 148 U.S.App.D.C. 411, 460 F.2d 949 (1972); United States v. Jenkins, 140 U.S.App.D.C. 392, 436 F.2d 140 (1970) (reference to defendant as a "teenage hoodlum"); Pendergast v. United States, 135 U.S.App.D.C. 20, 416 F.2d 776 (1969); Taylor v. United States, 134 U.S.App.D.C. 188, 413 F.2d 1095 (1969) (prosecutor's characterization of defendant as having shot and kicked the

victim "like a dog"); Jackson v. United States, 134 U.S.App.D.C. 18, 412 F.2d 149 (1969) (references in summation to "President Kennedy's inaugural address . . . Fourth of July fireworks . . . and the services to humanity of the Canine Corps dogs").

**44.** Alschuler, Courtroom Misconduct by Prosecutors and Trial Judges, 50 Tex.L.Rev. 629, 631 (1972). For expressions of my own view that affirmances under the harmless error rule are conducive to "laxity in the administration of criminal justice," see United States v. Lee, 165 U.S.App.D.C. 50, at 68, 506 F.2d 111, at 129 (1974) (Bazelon, C. J., dissenting); United States v. Leonard, *supra* note 21, 494 F.2d at 975–77 (Bazelon, C. J., concurring in part and dissenting in part). *See also* Cameron & Osborn, When Harmless Error Isn't Harmless, 1971 Law & Social Order 23, 42.

**45.** There is, after all, every reason to believe that reversal will have a greater impact than a reprimand accompanied by affirmance. In this area, unlike the realm of police misconduct addressed by the fourth amendment exclusionary rule, the burden of reversal falls directly on the one responsible for the misconduct. *See* Alschuler, *supra* note 44, at 646–47.

objection at that point would have forced the Government to disclose the purpose for which the evidence was being introduced and would have led to a prompt ruling on its admissibility and possibly an immediate cautionary instruction if it was ruled admissible for only a limited purpose. Despite this, appellant made no attempt to call any deficiency in the evidence to the court's attention at any time and thus waived the right to raise it on appeal.[1] United States v. Lewis, 140 U.S.App.D.C. 40, 433 F.2d 1146 (1970); Washington v. United States, 134 U.S.App.D.C. 223, 414 F.2d 1119 (1969).

Since the majority recognizes 169 U.S. App.D.C. ——, 514 F.2d 1317, *supra*) that the "Dickie" testimony was admissible to show why the officers went to a particular address, it is left only with an argument that under United States v. McClain, 142 U.S.App.D.C. 213, 218, 440 F.2d 241, 246 (1971), the trial court should have *sua sponte* given a cautionary instruction limiting the use of the testimony. Even under this principle, the majority must concede that an immediate instruction was not necessary because the relevance of the testimony did not become apparent until later in trial. However, according to the law of this Circuit, which is also the generally accepted doctrine elsewhere:

> Hearsay evidence is not wholly alien to the judicial process and in the absence of objection may be accorded within reason its natural probative effect.

United States v. Harris, 141 U.S.App. D.C. 253, 258, 437 F.2d 686, 691 (1970). See Diaz v. United States, 223 U.S. 442, 450, 32 S.Ct. 250, 56 L.Ed. 500 (1912); United States v. Carney, 468 F.2d 354 (8th Cir. 1972); Newsom v. United States, 335 F.2d 237 (5th Cir. 1964); Petro v. United States, 210 F.2d 49 (6th Cir.), cert. denied, 347 U.S. 978, 74 S.Ct.

790, 98 L.Ed. 1116 (1954); United States v. Rosenburg, 195 F.2d 583 (2d Cir.), cert. denied, 344 U.S. 838, 73 S.Ct. 20, 97 L.Ed. 652, rehearing denied, 344 U.S. 889, 73 S.Ct. 134, 97 L.Ed. 687 (1952). See generally 30 Am.Jur.2d, Evidence § 1103. Thus once the evidence had been admitted without objection, the jury was free to consider it for whatever it was worth, and the trial court would have no occasion to weigh the need for a limiting instruction later, at least in the absence of a direct attempt by counsel to correct some oversight occurring when the evidence was admitted.

I am of course aware that this court has discretion to notice "plain or fundamental defects or errors affecting substantial rights . . . although they were not brought to the attention of the trial court." *Harris, supra*, 437 F.2d at 691. See Fed.R.Crim.P., Rule 52(b). However, in a situation where evidence is admitted without objection for two purposes, only one of which is susceptible to a hearsay objection, and the most the defendant would be entitled to is a limiting instruction, I cannot conclude that this is "plain error" or has affected "substantial rights."

Concerning the prosecutor's reference to appellant's "background," the majority opinion points out, "[t]here is no evidence on the record that could have supplied content to the word 'background.' No prior arrests or convictions were introduced [and] . . . defense counsel stated in summation [without contradiction] that the defendant 'was a young man with no prior record.'" Majority Op., *supra*, 169 U.S.App.D.C. ——, 514 F.2d 1319. This is merely another way of saying that the comment was completely devoid of any meaning as applied to this case. The remark was clearly uncalled for, as was the comment on the accused taking the stand in his own behalf, but there is nothing in the record to indicate that either comment resulted in any demonstrable prejudice.

---

1. In addition to not objecting to the admission of Officer Mullarky's testimony as part of the Government's case, defense counsel later elic-

ited the identical testimony on his cross-examination of the officer. Tr. 91–93.

Furthermore, the reaction of trial counsel to developments in the course of a trial is frequently a good bellweather as to whether any circumstance is unreasonably prejudicial. He has the feel of the case and knows first hand the courtroom climate. Moreover, standard trial practice generally requires counsel to object *at trial* so that the prejudice, if any, can be corrected on the spot and society spared the unnecessary cost and uncertainty of a second trial. This is particularly true as to matters that could be corrected by jury instructions:

No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.

Fed.R.Crim.P., Rule 30. Both of the comments by the prosecutor that appellant points to for the first time on appeal could have been corrected by instructions to the jury immediately following the prosecutor's argument, but experienced trial counsel saw no reason to object thereto. The failure to object is thus further evidence that the comments were merely fleeting remarks which did not significantly prejudice the jury in any way.

When we consider that the absence of any demonstrable prejudice, as shown above, is combined with the strong, positive identification of the accused robber by the victim himself within a few minutes of the crime and about two blocks from the scene, affirmance of the conviction is clearly called for. I accordingly respectfully dissent to the needless reversal and remand of this case.