## UNITED STATES of America

v.

## Anthony A. FREEMAN, Appellant.

### No. 73–1982.

United States Court of Appeals, District of Columbia Circuit.

April 20, 1979.

51. See text *supra* at note 5.

52. *Pendergrast v. United States, supra* note 5, 135 U.S.App.D.C. at 28, 416 F.2d at 784.

Opinion following remand (D.C. Criminal No. 1245–72).

Before BAZELON, ROBINSON and MacKINNON, Circuit Judges.

Opinion PER CURIAM.

Concurring Opinion filed by MacKINNON, Circuit Judge.

PER CURIAM:

■ As explicated in our prior opinion in this case,[1] we were constrained to reverse appellant's conviction for armed robbery because of the cumulative prejudicial impact[2] of what appeared from the record to be three distinct errors, none of which had been objected to at trial. One was the District Court's failure to give *sua sponte* a limiting instruction on proper use of certain hearsay testimony linking one "Dickie" with the crime, appellant and an important defense witness.[3] The other two were a comment by the prosecutor in closing argument on appellant's decision to take the witness stand,[4] and a reference—so it seemed—to appellant's "background."[5] The trial transcript of this portion of the prosecutor's summation read:

> You have another corroborating factor, Mr. Freeman himself. Why would he have to take the stand? Why would he testify they were all playing basketball until one o'clock, decided to walk across the street and then go back and was arrested? . . . Unless, ladies and gentlemen, he knows that he is the one who committed the offense and he tried to run away the first time, that didn't work and now he's trying to get himself out of it any other way he can. And can't you tell from all the evidence, can't you put it down that the reason that he told you the stories was because of his background? Doesn't the evidence lend that conclusion?[6]

We considered this apparent allusion to appellant's background to be crucial.[7] After our decision was announced, however, the Government protested for the first time

---

1. *United States v. Freeman,* 169 U.S.App.D.C. 73, 514 F.2d 1314 (1975).

2. *Id.* at 77, 514 F.2d at 1318.

3. *Id.* at 75–77, 514 F.2d at 1316-1318.

4. *Id.* at 77–80, 514 F.2d at 1318-1321.

5. *Id.*

6. Trial Transcript at 217, quoted in *United States v. Freeman, supra* note 1, 169 U.S.App. D.C. at 77, 514 F.2d at 1318.

7. See text *infra* at notes 12–14.

that, the record notwithstanding, the background reference never in fact occurred. Yet the transcript starkly portrayed it, and resort to the court reporter's audio tape [8] left us unable to refute it.[9] Hence, when .the Government offered to have an aural expert examine the tape with a view to correction of the record if a variance was found, we accepted the invitation and deferred issuance of the mandate. We remanded the record to the District Court, authorizing it to rectify the transcript should testimony by the expert establish the propriety of that course.[10]

The expert indeed found a mistake, and a significant one—the prosecutor did *not* advert to appellant's background. The District Court then revised the transcript, and we now know that the prosecutor actually said:

> And can't you tell from all the evidence, can't you, put it down as a reason that he's tellin', that he told you the stories because the fact, doesn't the evidence explain the backdrop he believes? [11]

This understanding alters our previous assessment that the combined prejudice of the three miscues indicated cognizable plain error.[12] We had thought that the ostensible reference to appellant's past was "intended primarily to reflect on [his] credibility but [was] also suggestive on the issue of

guilt." [13] Since appellant's fate hinged mainly on whether the jury believed his story that he was playing basketball with a friend, Lawrence Tucker, when the robbery occurred, the prosecutor's apparent insinuation, we felt, tipped the balance in favor of reversal.[14]

 We do not underestimate the gravity of the remaining two errors. The remark on appellant's undertaking to testify in his own behalf, though fleeting, was confusing and irrelevant,[15] but its potential for injury was not great. More serious was the unrestricted admission of hearsay testimony that "Dickie," the brother of Lawrence Tucker and a friend of appellant, may have been involved in the robbery.[16] Yet harm from this error was not readily discernible, unlike other cases in which we have deemed omission of a cautionary instruction plain error,[17] and we certainly cannot characterize the failure to confine the "Dickie" testimony to its legitimate use as "highly prejudicial." [18] To be sure, that testimony—in particular, the statement that "Dickie" and appellant's chief corroborating witness, Lawrence Tucker, were brothers—undercut that witness' credibility.[19] But, according to appellant, Lawrence Tucker was a good friend, and thus the jury

---

8. The reporter taped the courtroom proceedings, as other reporters do, as a backup for the principal stenographic record.

9. Though we listened carefully to replays of the tape, we could not be certain in this regard. See *United States v. Freeman*, No. 73–1983 (D.C. Cir. Feb. 22, 1977) (order remanding record to District Court).

10. *United States v. Freeman, supra* note 9; *United States v. Freeman*, No. 73 -1983 (D.C. Cir. Dec. 20, 1977) (order granting District Court authority to make changes in trial transcript deemed necessary).

11. *United States v. Freeman*, No. 73-1983 (D.D.C. Jan. 24, 1978) (on remand).

12. See Fed.R.Crim.P. 52(b).

13. *United States v. Freeman, supra* note 1, 169 U.S.App.D.C. at 78, 514 F.2d at 1319.

14. *Id.*

15. *Id.* at 77--78, 514 F.2d at 1318–1319.

16. *Id.* at 74- 77, 514 F.2d at 1315–1318.

17. *E. g., United States v. McClain*, 142 U.S. App.D.C. 213, 440 F.2d 241 (1971); see *United States v. Freeman, supra* note 1, 169 U.S.App. D.C. at 76 n. 21, 514 F.2d at 1317 n. 21. See also *United States v. Greene*, 497 F.2d 1068, 1077 (7th Cir. 1974), *cert. denied*, 420 U.S. 909, 95 S.Ct. 829, 42 L.Ed.2d 839 (1975).

18. *United States v. Fench*, 152 U.S.App.D.C. 325, 332, 470 F.2d 1234, 1241 (1972), *cert. denied sub nom. Blackwell v. United States*, 410 U.S. 909, 93 S.Ct. 964, 35 L.Ed.2d 271 (1973); see *United States v. Thomas*, 148 U.S.App.D.C. 148, 459 F.2d 1172 (1972); *United States v. Mizzell*, 146 U.S.App.D.C. 399, 452 F.2d 1328 (1971).

19. *United States v. Freeman, supra* note 1, 169 U.S.App.D.C. at 75–76, 514 F.2d at 1316–1317.

already had some basis for disbelieving his reinforcement of appellant's alibi,[20] especially since other competent evidence cast doubt on it.[21] We are mindful, too, that the robbery victim identified appellant as the culprit within a half-hour of the crime, and reiterated that accusation at trial.[22]

In short, a pivotal support for our earlier conclusion that "[p]lain error . . . affecting substantial rights"[23] infected appellant's trial has collapsed. We thus vacate our prior judgment of reversal and affirm the District Court's judgment of conviction.

*So ordered.*

MacKINNON, Circuit Judge, concurring:

Except to the extent that it may be inconsistent with my prior dissenting opinion in this case, *United States v. Freeman,* 169 U.S.App.D.C. 73, 514 F.2d 1314, 1321 (D.C. Cir. 1975), I concur in the *Per Curiam* opinion vacating our prior judgment and affirming the judgment of the trial court.

---

**20.** *Id.* at 75, 514 F.2d at 1316.

**21.** We canvassed some of this evidence: "testimony by Officer Fant that he did not recall seeing anyone playing basketball at the playground when he passed there sometime after 10:00 A.M. on the morning of the robbery; testimony that appellant was not sweating when he was arrested as he might have been if he had played basketball hard all or most of the morning." *Id.* at 79 n. 37, 514 F.2d at 1320 n. 37.

**22.** *Id.* at 79 n. 36, 514 F.2d at 1320 n. 36.

**23.** Fed.R.Crim.P. 52(b).