**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

NANCY MAGENO,
*Defendant-Appellant*.

No. 12-10474

D.C. No.
2:11-cr-00048-JCM-
CWH-7

ORDER GRANTING
PETITION FOR
REHEARING,
VACATING OPINION
AND AFFIRMING
JUDGMENT OF
CONVICTION

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued and Submitted
September 10, 2013—San Francisco, California

Filed May 19, 2015

Before: J. Clifford Wallace, Raymond C. Fisher
and Marsha S. Berzon, Circuit Judges.

Order

## SUMMARY[*]

### Criminal Law

The panel granted the government's petition for rehearing, vacated its prior opinion vacating the defendant's conviction, and affirmed the defendant's conviction for conspiracy to distribute methamphetamine.

In the prior opinion, the panel vacated the defendant's conviction because of what appeared from the record to be the prosecution's misstatement of the evidence during closing arguments. The court reporter's official transcript has since been corrected, and shows that no misstatements actually occurred. This transcription error was first brought to the panel's attention in the government's petition for rehearing.

The panel held that it has authority under Fed. R. App. P. 40 to grant a petition for rehearing for the purpose of recognizing corrections in the trial transcript raised at this stage of the proceedings. The panel emphasized that its holding is limited to the context of mistakes and omissions of the kind addressed by Fed. R. App. P. 10(e). The panel further held this case presents extraordinary circumstances that warranted reaching the transcription error even though it was raised for the first time in the government's petition for rehearing.

The panel affirmed the conviction for the reasons stated in a previously filed memorandum disposition.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Mace J. Yampolsky (argued), Mace J. Yampolsky, Ltd., Las Vegas, Nevada, for Defendant-Appellant.

Adam M. Flake (argued), Assistant United States Attorney; Daniel G. Bogden, United States Attorney; Robert L. Ellman, Appellate Chief, Office of the United States Attorney, Las Vegas, Nevada, for Plaintiff-Appellee.

**ORDER**

In our prior opinion in this case, we vacated Nancy Mageno's drug conspiracy conviction because of what appeared from the record to be the prosecution's misstatement of the evidence during closing arguments. *See United States v. Mageno*, 762 F.3d 933 (9th Cir. 2014). The court reporter's official transcript has since been corrected, and we now know that no misstatements actually occurred. The government has brought these transcript corrections to our attention for the first time in a petition for rehearing, asking us to vacate our prior opinion and affirm Mageno's conviction. We hold, first, that we have authority under Federal Rule of Appellate Procedure 40 to grant a petition for rehearing for the purpose of recognizing corrections in the trial transcript raised at this stage of the proceedings and, second, that this case presents extraordinary circumstances that warrant doing so. Because Mageno was properly convicted following a fair trial, vacating her conviction would not serve the interests of justice. Accordingly, we grant the government's petition for rehearing, vacate our prior opinion and affirm Mageno's conviction.

**BACKGROUND**

In 2011, a federal grand jury indicted Nancy Mageno on one count of conspiracy to distribute more than 50 grams of methamphetamine in violation of 21 U.S.C. § 846 and one count of distribution of a controlled substance in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(viii) and 18 U.S.C. § 2.

The charges against Mageno arose principally from her role in translating phone calls regarding methamphetamine transactions for her Spanish-speaking godson, Jesus Guadalupe ("Virrio") Felix-Burgos, in 2010. At trial, Mageno denied knowingly conspiring to distribute methamphetamine, testifying she had been unaware that her godson was involved in illegal drugs or that the phone calls she was translating involved drug transactions.

To help prove Mageno's knowledge, the government elicited testimony from Burgos that he had been deported for drug trafficking three years before the phone calls in question and, significantly, that Mageno knew the reason for his deportation:

> Q. Well, you were in the United States in 2007, were you not?
>
> A. Yes.
>
> Q. You were living with Ms. Mageno during that time frame, too, correct?
>
> A. Yes.
>
> Q. How long did you live with her in 2007?

A. It was for about a year as well.

Q. And then you had to go back to Mexico, correct?

A. Yes.

Q. You were deported, right?

A. Yes.

*Q. Ms. Mageno knew why you were deported?*

MR. YAMPOLSKY [Mageno's counsel]: Objection, calls for speculation.

*A. Yes.*[1]

THE COURT: If he can answer it, he can answer it.

[Sidebar held.]

Q. Mr. Burgos, going back to the 2007, the reason why you were deported was because you were trafficking in methamphetamine, isn't that right?

A. Yes.

---

[1] As we shall explain, this answer was omitted from the court reporter's original official trial transcript. The omission was first brought to our attention in the government's petition for rehearing.

In closing arguments, the government relied in part on this testimony to establish Mageno's knowledge. It argued, for example, that the jury should infer Mageno knew the phone calls involved drug transactions because, "[b]eginning in 2007 when Virrio was living with her, he was arrested and deported for distributing methamphetamine. This is something *Virrio explained to you she knew* because he was living with her, then he comes back." In the government's view, Mageno had to know the phone calls involved illegal drugs because she "already in her head *knew that Virrio*, the person she was translating for, *has a history of distributing methamphetamine*." It argued to the jury that "in 2007, she already knows. Is it past is prologue? He's been deported because he was trafficking methamphetamine while he was living with her. *He testified she knew why he was deported*."[2]

The jury convicted Mageno on the conspiracy charge and acquitted her of the distribution charge. The district court sentenced Mageno to 87 months in prison followed by five years of supervised release.

Mageno appealed, raising as her sole claim of error that the evidence against her was insufficient to sustain the conviction. Assistant United States Attorney Adam Flake, assigned to draft the government's answering brief, had not

---

[2] The defense's closing argument also referred to Burgos' testimony:

> Now, he said on the stand, and I'm not a hundred percent sure, it's either one o[f] two things. He either said, I was deported and she knew about it, or she knew why I was deported, but the question is how would he know she knew why? Did he come up and say, hey, by the way, I've been dealing drugs, you know, and I'm gone?

been present at trial and relied solely on the reporter's transcript of the proceedings. While reviewing the trial transcript, he discovered what appeared to be misstatements by the trial prosecutors. As noted, the government attorneys stated in their closing arguments that Burgos had testified that Mageno knew why he had been deported in 2007. The trial transcript, however, indicated (incorrectly, we now know) that, although Burgos had been *asked* whether Mageno knew why he had been deported, he had not *answered* that question.

In consultation with his supervisor, Flake concluded he should bring these apparent misstatements to the court's attention even though Mageno had not raised the issue in her opening brief. Accordingly, the government argued in its answering brief:

> Although not raised by Mageno, the Government has discovered that during closing argument, the prosecutors incorrectly claimed that Felix-Burgos had testified that Mageno knew that he had been previously deported for dealing methamphetamine. The Government believes its duty of candor requires it to bring this fact to the Court's attention. This mistake does not warrant reversal, however[,] because the prosecutors' misstatements were apparently inadvertent, because Mageno did not object and has not attempted to show prejudice, because the district court instructed the jury that the attorneys' arguments were not evidence, and because regardless whether the jury believed that Mageno knew why Felix-Burgos had

been deported, the other evidence against her
amply demonstrated her guilt.

Mageno did not file an optional reply brief, and so did not
address the misstatement-of-the-evidence issue raised by the
government in any of her briefing. We inquired about the
issue at oral argument, however, and at that time Mageno's
counsel adopted the issue and argued briefly that it warranted
vacating her conviction.[3]

In August 2014, this panel issued lengthy published
opinions, including a dissent, vacating Mageno's conviction
based on the (apparent) prosecutorial misstatements that the
government had brought to the court's attention. *See
Mageno*, 762 F.3d 933. Although Mageno had not raised the
issue in her opening brief, the court held in the majority
opinion that it had discretion to reach the issue because the
government had sufficiently addressed it in its answering
brief and would not be prejudiced by our doing so. *See id.* at
939–43 (citing *United States v. Ullah*, 976 F.2d 509, 514 (9th
Cir. 1992)). The court then concluded that the standard for
plain error was satisfied, holding that the "comments at
closing clearly misstated evidence, by explicitly and
implicitly stating, five times in all, that Burgos testified that
Mageno knew he was previously deported for drug
trafficking." *Id.* at 945. It further held that "the
government's misstatements likely prejudiced the outcome of

---

[3] In his prior dissent, however, Judge Wallace maintained that
"Mageno's attorney did *not* adopt the argument. He merely agreed with
a member of this court that it was 'a valid argument.' He never made a
coherent argument for why we should reverse . . . ." *Mageno*, 762 F.3d
at 956 (Wallace, J., dissenting). Judge Wallace still adheres to that
position.

Mageno's trial," and that the "error seriously impeded the jury's ability to function as an impartial fact-finder, thereby affecting the fairness and integrity of judicial proceedings." *Id.* at 947. Accordingly, the court vacated Mageno's conviction "so that she may have an untainted shot at maintaining her innocence without the prosecution's damaging misstatements." *Id.* at 949. The dissenting member of the panel would not have reached the prosecutorial misstatements issue. Because "Mageno did not object to the alleged prosecutorial misstatements at trial, and did not argue that the statements prejudiced her in her appellate brief," he would have deemed the argument waived. *Id.* at 949 (Wallace, J., dissenting). He also disagreed with the majority's conclusion that the plain error standard was satisfied. He would have upheld the conviction because, in his view, "[o]nly one of the statements was improper," "[t]here was so much evidence submitted by the government at trial that Mageno would have been convicted regardless of the statements," "[s]ome of the prejudice Mageno may have suffered was mitigated by the district court's curative instructions, and any misstatements were unintentional." *Id.* In an accompanying unpublished memorandum disposition, we rejected Mageno's challenge to the sufficiency of the evidence. *See United States v. Mageno*, 584 F. App'x 487 (9th Cir. 2014).

Shortly after we issued those decisions, one of the government prosecutors who had handled the trial contacted Elizabeth O. White, Appellate Chief and Assistant United States Attorney for the District of Nevada, to say that he distinctly recalled Burgos testifying that Mageno knew why

he had been deported.**[4]**  He advised White he was certain that neither he nor the other prosecutor had misstated Burgos' testimony.  In light of the prosecutor's recollection, the government sought and obtained an order from the district court to review the audio recording of Burgos' testimony. Mageno did not oppose the motion.

White compared the audio recording to the official transcript and discovered several material omissions in the transcript.  Most significantly, the audio recording revealed that Burgos not only had been *asked* whether Mageno knew why he was deported but had *answered* the question affirmatively.  The audio recording showed, therefore, that the prosecution had *not* misstated the evidence during closing arguments, and that our opinion vacating Mageno's conviction was based on an erroneous factual premise.  In light of these discoveries, the government asked the district court to correct the errors in the transcript and certify and forward a corrected record to this court.  *See* Fed. R. App. P. 10(e).  Mageno did not oppose the motion, and it was granted by the district court.**[5]**

---

**[4]** One of the two government lawyers who handled the trial left the U.S. Attorney's Office in 2012, before briefing on this appeal.  The other trial lawyer remains with the Department of Justice in Washington, D.C.

**[5]** Rule 10(e) states:

> Correction or Modification of the Record.
>
> (1) If any difference arises about whether the record truly discloses what occurred in the district court, the difference must be submitted to and settled by that court and the record conformed accordingly.
>
> (2) If anything material to either party is omitted from

The government then filed a petition for panel rehearing, asking us to vacate our published opinion and affirm Mageno's conviction. *See* Fed. R. App. P. 40. It argued rehearing was appropriate because "material errors in the reporter's transcript led the government – and, in turn, the Court – to misapprehend what actually occurred at trial." It acknowledged that "these unfortunate consequences for the Court and the trial attorneys could have been avoided if the appellate division had consulted with the trial attorneys before inserting this issue into the appeal," but it assured us that "the U.S. Attorney's Office has instituted new procedures for reviewing appellate briefs to ensure this type of error will not happen again."

---

or misstated in the record by error or accident, the omission or misstatement may be corrected and a supplemental record may be certified and forwarded:

(A) on stipulation of the parties;

(B) by the district court before or after the record has been forwarded; or

(C) by the court of appeals.

(3) All other questions as to the form and content of the record must be presented to the court of appeals.

Fed. R. App. P. 10(e). No suggestion has been made that the government's Rule 10 motion was untimely. *See United States v. Zichettello*, 208 F.3d 72, 97 n.11 (2d Cir. 2000) ("Fed. R. App. P. 10(e) does not contain a time limitation regarding such a motion."); *United States v. Mori*, 444 F.2d 240, 246 (5th Cir. 1971) ("Under Rule 10(e) it is clear that the district court may consider a motion to correct the record even after appeal has been taken.").

We asked Mageno to file a response to the government's petition, which she did. In her response, Mageno conceded that the corrected transcript was accurate and hence that the prosecution had not misstated the evidence in closing arguments. Mageno nonetheless argued that her conviction should be overturned on a new ground not previously raised in this appeal – that her counsel's objection to Burgos' testimony should have been sustained because the government failed to lay a proper foundation showing how Burgos knew that Mageno knew why he was deported.

## DISCUSSION

The government's petition for rehearing requires us to address two questions. We must first determine whether we have *authority* under Rule 40 to grant a petition for rehearing where, as here, we correctly apprehended the record that *was presented to us* but, because of an error in the official transcript, we misapprehended the *facts* upon which our opinion was based. We hold that we have such authority. We must then decide whether we should exercise that authority in favor of the government under the circumstances of this case. We conclude that we should. Although our discretion to recognize transcription errors at this late date should not be exercised routinely, under the exceptional circumstances of this case the equities favor doing so. We therefore grant the petition for rehearing, vacate our prior opinion and affirm Mageno's conviction.

## I.

We begin by addressing the question of our authority to grant relief under Rule 40. "A properly drawn petition for rehearing serves a very limited purpose." *Armster v. U.S.*

*Dist. Court for Cent. Dist. of Cal.*, 806 F.2d 1347, 1356 (9th Cir. 1986) (quoting *Anderson v. Knox*, 300 F.2d 296, 297 (9th Cir. 1962)) (internal quotation marks omitted). "The petition must state with particularity each point of law or fact that the petitioner believes the court has overlooked or misapprehended . . . ." Fed. R. App. P. 40(a)(2). Our authority under Rule 40, therefore, extends only to those situations in which we have "overlooked or misapprehended" a "point of law or fact." *Id.*

We have not yet addressed whether this authority exists where, as here, we correctly apprehended the record *as it was presented to us*, but, because the record was incorrect, we misapprehended the actual facts upon which our decision was based. We now hold that it does. First, this conclusion is consistent with the plain language of the rule. Rule 40 applies when we have "misapprehended" a "point of . . . fact." *Id.* That unquestionably occurred here. When we issued our opinion, we believed that Burgos had *not* testified that Mageno knew the reason he was deported and that the prosecution therefore *had* misstated the evidence in its closing arguments. We now know that each of those conclusions about what occurred at trial was incorrect.

Second, our conclusion that Rule 40 applies to a misapprehension of the actual facts, not merely a misapprehension of the record presented to us, is consistent with our case law. Petitions for rehearing, we have explained, "serve the limited purpose of enabling a panel to *correct an error* in its decision." *Armster*, 806 F.2d at 1355 n.9 (emphasis added). An error can as easily arise from a correct understanding of an incorrect transcript, as occurred here, as it can from an incorrect understanding of a correct transcript. Either scenario – misinterpreting an accurate

record or relying on an inaccurate one – produces the same result: an error in our decision. Under *Armster*, rehearing is appropriate when the panel has not "properly considered all relevant information in rendering its decision." 806 F.2d at 1356. That plainly occurred here.

In sum, we hold that we have authority under Rule 40 to grant a petition for rehearing where, as here, we correctly apprehended the record that was presented to us but, because of an error in the official transcript, misapprehended the actual facts upon which our opinion was based. We emphasize that our holding in this regard is limited to the context of mistakes and omissions of the kind addressed by Rule 10(e). It remains true that a petition for rehearing is not a vehicle for a party to "study and reargue his case anew." *Anderson*, 300 F.2d at 297.**[6]**

## II.

We next address whether we should exercise this authority favorably to the government under the circumstances of this case. "As a general rule, we will not consider issues that a party raises for the first time in a petition for rehearing." *Varney v. Sec'y of Health & Human*

---

**[6]** Thus, for example, a panel cannot be said to overlook or misapprehend facts that *occurred* after its initial decision, even if those later events prove the assumptions on which an opinion was based to have been incorrect. *See Armster*, 806 F.2d at 1356–57. Similarly, parties may not seek rehearing based on evidence that was not previously presented to the district court and the panel. *Cf. Morrison v. Hall* 261 F.3d 896, 900 n.4 (9th Cir. 2001) ("Rule 10(e) cannot be used to add to or enlarge the record on appeal to include material which was not before the district court." (quoting *United States v. Walker*, 601 F.2d 1051, 1054–55 (9th Cir. 1979)) (internal quotation marks omitted)).

*Servs.*, 859 F.2d 1396, 1397 (9th Cir. 1988). "We recognize an exception, however, for cases involving extraordinary circumstances." *Id.* We hold that the extraordinary circumstances standard is satisfied here.

First and most significantly, recognizing the error serves the interests of justice. We now know that Mageno's conviction was properly obtained following a fair trial, and not by the government's misstatement of the evidence. The principle of finality serves important interests, but there are times when they are outweighed by the interest in achieving a just result. *See Henry v. Ryan*, 748 F.3d 940, 942 (9th Cir.) (Fisher, J., dissenting) ("Although there may be times when getting the right answer should yield to the interest in finality, this is not one of them."), *reh'g en banc granted*, 766 F.3d 1059 (9th Cir.), *and on reh'g en banc*, 775 F.3d 1112 (9th Cir. 2014). The extraordinary circumstances requirement ensures that the principles underlying waiver are honored. In addition, before issuance of our mandate, the interest in finality is not absolute. *See United States v. Foumai*, 910 F.2d 617, 620 (9th Cir. 1990) ("A court of appeals may modify or revoke its judgment at any time prior to issuance of the mandate, sua sponte or by motion of the parties. Thus, finality of an appellate order hinges on the mandate, as does a defendant's expectation of finality.").[7]

Second, in a typical case, raising a transcription error at this stage of the proceedings is likely to substantially prejudice the opposing party, who has expended considerable resources in raising and presenting her arguments to the

---

[7] Even after the mandate has issued, we may recall it in extraordinary circumstances. *See United States v. Bd. of Directors of Truckee-Carson Irr. Dist.*, 723 F.3d 1029, 1034 (9th Cir. 2013).

courts.    Under the unusual facts of this case, however,
Mageno did nothing to raise or present the prosecutorial
misstatements argument, either to the district court or to this
court.    All the work on the issue was performed by the
government and this court.  Mageno, therefore, would not be
unfairly prejudiced by our reaching this issue.

Third, in a typical case, recognizing a transcription error
at this juncture may reward the petitioning party for its lack
of diligence.  Even here, the government certainly could have
– and perhaps should have – discovered the error sooner, as
it concedes.  Arguably, the proper course would have been for
the appellate government attorneys to check the recording
*before* filing their brief, or, at the very least, to contact trial
counsel once they identified the apparent error in closing
argument.[8]    But again, this is an extraordinary case, not a
typical one.  In *this* case, it was the government, not Mageno,

---

[8] We do not mean to suggest that appellate attorneys generally cannot
rely on the accuracy of transcripts.  *Cf.* 28 U.S.C. § 753(b) ("The
transcript in any case certified by the reporter or other individual
designated to produce the record shall be deemed prima facie a correct
statement of the testimony taken and proceedings had.").  But here, further
inquiry was strongly advisable.  In light of the statements in closing
argument by two different prosecutors, both present during the testimony,
that Burgos said Mageno did know why he was deported, it was at least
somewhat unlikely that, as the transcript indicated, Burgos did not answer
the question posed as to whether she did.  Appellate counsel therefore
should have taken steps to assure the accuracy of the transcript before
making affirmative representations regarding what happened at trial and
implicating the trial prosecutors in either incompetence or misconduct.
Although one of the government's trial lawyers left the U.S. Attorney's
Office before briefing on this appeal, the other lawyer remained with the
Department of Justice in Washington, apparently available at all times to
consult with appellate counsel.  Were such consultation for some reason
not possible, additional steps, including listening to the tapes, would have
been warranted.

that initially brought the perceived prosecutorial error to this court's attention in the first place – a showing of laudable integrity that counterbalances the government's troubling lack of diligence in discovering the transcription error. Where, as here, "we are convinced that the . . . failure to present the issue at the proper time was inadvertent or negligent rather than willful," *Escobar Ruiz v. INS*, 813 F.2d 283, 286 (9th Cir. 1987), we have discretion to grant relief. *See, e.g.*, *United States v. Geyler*, 949 F.2d 280, 282 (9th Cir. 1991); *Varney*, 859 F.2d at 1398.

Finally, we recognize that vacating our opinion at this point will result in a significant waste of judicial resources; if the government had acted more diligently, "much controversy and expense could have been avoided." *Schanen v. U.S. Dep't of Justice*, 798 F.2d 348, 350 (9th Cir. 1985). We are not persuaded, however, that this consideration outweighs the interest in arriving at a just result. Denying the relief the government seeks, moreover, will do nothing to conserve future judicial resources in this case. On the contrary, it will require a second trial and potentially a second appeal, even though, we now know, the first trial was properly and fairly conducted. We recognize that a practice of routinely allowing such tardy corrections to the record *would* waste judicial resources in future cases, but are satisfied that today's narrow holding, limited to the extraordinary circumstances presented in this case, will adequately encourage parties to timely review the accuracy of transcripts when the circumstances, as here, suggest the need to do so.

We conclude, therefore, that this is an extraordinary case in which we should consider an issue raised for the first time in a petition for rehearing. Our conclusion is consistent with relevant authority from other circuits. Indeed, the most

analogous case we have found, *United States v. Freeman*, 598 F.2d 306 (D.C. Cir. 1979), granted similar relief under almost identical circumstances. And although the Second Circuit denied similar relief in *United States v. Quiroz*, 22 F.3d 489 (2d Cir. 1994), it did so under plainly distinguishable facts.

In *Freeman*, the D.C. Circuit published an opinion reversing the defendant's conviction on the ground that the prosecutor had improperly referred to the defendant's "background" during closing arguments. *See Freeman*, 598 F.2d at 307. After that opinion was issued, the government argued for the first time that the trial transcript was in error and that the reference to the defendant's background never occurred. *See id.* at 307–08. An expert's review of the court reporter's audio tape bore out the government's contention, and the district court revised the transcript accordingly. *See id.* at 308. The D.C. Circuit, relying on the revised transcript, vacated its previous judgment and affirmed the defendant's conviction. *See id.* at 309.

In *Quiroz*, the Second Circuit vacated the defendant's conviction on the ground that his postarrest statements to government agents were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), and thus should have been suppressed. *See Quiroz*, 22 F.3d at 489–90. After the court issued its opinion, the district judge alerted the parties to her recollection that the defendant had not objected to the magistrate judge's decision recommending the denial of his motion to suppress the statements, even though the official transcript showed the defendant *had* objected. *See id.* at 490. The district judge's recollection was confirmed by the audio tapes of the proceedings. *See id.* The transcript was

corrected and the government then petitioned for rehearing, asking the Second Circuit to vacate its opinion and affirm the defendant's conviction on the ground that he had waived objection to the admission of his postarrest statements by failing to object to the magistrate judge's recommendation. *See id.* The Second Circuit denied the government's request. *See id.* Because the government had failed to raise the issue sooner, the court would not consider the issue "unless manifest injustice otherwise would result." *Id.* at 490–91 (internal quotation marks omitted). This standard was not satisfied:

> Nor has the government articulated a persuasive basis for finding that a refusal on our part to accept the government's belated claim of waiver would result in manifest injustice. Since we concluded on this appeal that the government violated Quiroz's constitutional right to counsel and that the admission of the unconstitutionally obtained statements was not harmless error, the manifest injustice at this stage would be to relieve the government of its waiver in order to relieve it of its violation of Quiroz's constitutional rights.

*Id.* at 491.[9]

---

[9] The court also declined to excuse the government's waiver on the theories that it (1) had new attorneys on appeal and (2) had relied on the erroneous trial transcript. The court rejected the first argument because trial counsel *had* participated in the appeal. *See Quiroz*, 22 F.3d at 491. It rejected the second argument because government counsel had been present at the proceedings at which the defendant had failed to object, and hence knew or should have known about the transcription error earlier.

Although we reach a different conclusion from *Quiroz*, we do so on quite different facts. Most significantly, recognizing the transcription error in *Quiroz* would have meant affirming a conviction that was *wrongfully* obtained, in violation of the defendant's constitutional rights. The Second Circuit emphasized that "the manifest injustice at this stage would be to relieve the government of its waiver in order to relieve it of its violation of Quiroz's constitutional rights." *Id.* Here, by contrast, recognizing the transcription error means affirming a conviction that was *justly* obtained; to overturn a conviction that we now know to have been entirely proper would constitute manifest injustice. Granting relief in *Quiroz* also would have substantially prejudiced the defendant, who had devoted substantial time and resources to raising and litigating the merits of his *Miranda* claim before the government's eleventh-hour assertion of waiver. Here, by contrast, Mageno made no effort to raise or litigate the prosecutorial misstatement issue (beyond, in the previous majority's view, briefly adopting the issue at oral argument), and so would not be unfairly prejudiced by our granting relief. Finally, although the government displayed lack of diligence in both cases, its lack of diligence here is partially mitigated by its commendable conduct in identifying and bringing the perceived prosecutorial error to the court's attention in the first place, a consideration absent in *Quiroz*. For these reasons, there is no conflict between our decision here and the Second Circuit's decision in *Quiroz*.

In sum, we hold that the extraordinary circumstances standard is satisfied. We exercise our discretion under Rule 40 to address the transcription error raised by the government for the first time in its petition for rehearing. Because the

---

*See id.*

corrected transcript shows that the prosecutorial misstatements did not occur, we grant the petition for rehearing and vacate our previously published opinion. In addition, we take this opportunity to correct our strong – and, we now know, unfounded – criticism of the lawyers involved in Mageno's trial. The majority opinion described the prosecutors' statements as "exceedingly reckless," *Mageno*, 762 F.3d at 948, and the dissent described Mageno's trial counsel as having performed deficiently by failing to object to the government's closing arguments, *see id.* at 961 (Wallace, J., dissenting). We now know that those characterizations are inaccurate because the government prosecutors did not in fact misstate the evidence during closing arguments.

## III.

As stated earlier, Mageno argues for the first time in her response to the government's petition for rehearing that we should overturn her conviction on the ground that Burgos should not have been permitted to testify that she knew why he had been deported without the prosecution laying a sufficient foundation to establish how he knew of her knowledge. Mageno, however, offers no explanation for failing to raise this issue in her opening brief. She does not argue, for example, that she would have presented the argument but for the erroneous transcript. Accordingly, we are unable to conclude that there are extraordinary circumstances that would warrant our reaching the issue. *See Varney*, 859 F.2d at 1397.

Furthermore, even if the issue were properly before us, we would reject Mageno's argument on the merits. "We review a district court's finding that evidence is supported by

a proper foundation for an abuse of discretion." *United States v. Tank*, 200 F.3d 627, 630 (9th Cir. 2000). Here, just prior to saying that Mageno knew why he was deported, Burgos testified that she was his godmother and that he lived with her for a year prior to his deportation. Although the issue of how *exactly* Burgos purported to know that Mageno knew why he was deported would have been "a fair subject for a reasonable cross-examination," the district court did not abuse its discretion in concluding that Burgos' prior testimony "laid a sufficient foundation for this relevant evidence to be admissible." *United States v. Diaz-Lopez*, 625 F.3d 1198, 1200 (9th Cir. 2010).

## CONCLUSION

We grant the government's petition for rehearing. We vacate our previously published opinion, *Mageno*, 762 F.3d 933. We affirm Mageno's conviction for the reasons stated in our previously filed memorandum disposition, *Mageno*, 584 F. App'x 487.

**PETITION FOR REHEARING GRANTED; OPINION VACATED; JUDGMENT OF CONVICTION AFFIRMED.**